[Civ. No. 7826.   Third Dist.   Dec. 6, 1950.]

CARMELLA BAGGESI, Appellant, v. PETE BAGGESI, Respondent.

Wade H. Coffill and Joel C. Stone for Appellant.

Mazzera, Snyder & DeMartini for Respondent.

VAN DYKE, J.—This is an appeal by the plaintiff and cross-defendant, Carmella Baggesi, from that part of a judgment decreeing that the defendant and the cross-complainant, Pete Baggesi, is the owner of an undivided one-half interest in certain real property in San Joaquin County. The action was begun by appellant who filed suit against respondent, her son, to recover what she alleged to be her share of the proceeds of sale of crops grown upon the land involved. Respondent answered, admitting in part and denying in part the alleged debt, and filed, in addition to his answer, a cross-complaint by which he sought the decree of the court declaring that he was the owner of an undivided one-half interest in the land, the legal and record title of which stood in the name of the appellant. The answer to the cross-complaint denied these allegations.

The trial court made findings of fact as follows: That on December 19, 1928, Cologero Baggesi and his wife, appellant here, purchased the land, consisting of 60 acres, taking title in joint tenancy; that the purchase price was approximately $17,000, a cash payment of $3,000 being made at the time of purchase and the balance remaining as a debt secured by a lien upon the land; that at that time the entire 60 acres,

except 15, were unimproved; that Cologero by reason of illness was unable to do the heavy work required in the normal operation of the property; that two years after the purchase Cologero and appellant, in order to induce their son Pete, then about 19 years of age, to remain on the land and work and improve the same as a farm, agreed with him that if he would do so, devoting his time and effort to the care, cultivation and development of the property, one-half of the property would be conveyed to him when the secured indebtedness had been paid; that Cologero died. January 6, 1937, and during the period intermediate between the making of the agreement and his death respondent had completely fulfilled his obligations under said agreement, having devoted his time and efforts to the care and development of the land, doing all the hard work thereon and receiving no pay or allowance of any kind therefor; that during that same period all of the proceeds of the crops produced were retained by respondent's parents and no part given to him; that just before his death Cologero executed a gift deed of his interest in the premises to appellant Carmella; that shortly after the death of Cologero respondent talked with appellant concerning the existing agreement, whereupon she ratified and reaffirmed the same, assured respondent the agreement was still in force and that she would perform the same in that if he fulfilled the balance of his part of the agreement the agreed compensation would be his; that respondent continued in the performance of his contract and up to January 1, 1941, received no pay or allowance from appellant for income produced from the property, the whole having been received by appellant; that appellant and respondent during 1941 made a further agreement whereunder respondent would continue as he had done in the past to operate the property and that 30% of the gross proceeds therefrom · would be given to appellant; that the balance would be used by respondent to pay the cost of operation, except that from her share appellant would pay state and county taxes and installments of interest and principal upon the secured indebtedness; that this agreement was subordinate to the general agreement before referred to; that pursuant to both agreements respondent continued in possession of the premises up to and including the year 1945, performing his obligations fully; that during the years 1941 to and including 1944, inclusive, appellant received $16,027.66 as her agreed share of the proceeds under the subordinate agreement and that there was a further sum due

under that agreement to her from respondent for the sale of 1945 crops in the sum of $2,715.46; that in February, 1946, appellant ousted and dispossessed respondent, he being still performing and willing to perform his obligations under the agreements and that thereafter she wrongfully refused to permit him to continue and placed another son in possession of the land; that during the time of his operation of the land respondent had paid from his own funds substantial sums of money for taxes and for installments upon the secured debt which were never repaid to him, and likewise from his own funds had expended considerable sums in improving the property; that during his tenancy the land had been leveled and at different times planted to grapes and peaches to the end that the whole farm had been completely placed under intensive cultivation and use and an irrigation system completed for the whole; that all these things were done by respondent in reliance upon the agreement that he would receive an undivided half interest in the property when the secured debt should have been paid and that as to this all save $3,471.50 had been paid in accordance with the agreement; that respondent at the trial offered to pay this balance.

The judgment decreed respondent to be the owner of an undivided one-half interest in the property and ordered that if within 15 days from the time the judgment should become final the parties could agree upon a specific and physical division that they exchange cross deeds in accordance therewith and that upon the failure to arrive at this solution then the clerk of the court should execute and deliver to respondent a deed to an undivided one-half interest. It was further adjudged as a concurrent condition to the delivery of any deed to respondent that he pay the said balance upon the secured debt, and finally that appellant recover the balance of the moneys found due her from respondent in the sum of $2,715.46.

Appellant urges two grounds for reversal, the first contention being that the court erred to her prejudice in taking judicial notice of certain alleged customs of Italian farmers in Stanislaus and San Joaquin counties. It appears that when respondent and his witnesses testified concerning the underlying agreement, which was oral, they expressed it as being an agreement that for the consideration stated respondent would ultimately receive "30 of the 60 acres" or "30 acres in that ranch" and no witness testified in words that he was to receive "an undivided one-half interest." For example,

Pete Baggesi, brother of decedent, said that Cologero had told him "when I pay for that ranch, there is thirty acres going to my son, Pete" and "when the ranch was paid for, thirty acres going to the son, Pete" because "he's the guy that work on the ranch, he's the guy that been make the ranch, he was working all the time" and "God help me to pay this acres, thirty acres go to him [respondent]" and "I don't feel very good but I don't worry, my son working on the ranch, God give me my kid work like the dickens on my ranch, if God help me when I pay for the ranch, thirty acres go to him." Respondent stated the promise as follows: "So he said, 'well, we've got to keep this ranch a'goin', you're the only one that's doing the heavy work' and he told me he says, 'here is your mother, she'll state the same thing,' which she did at the time, that 'this thirty acres of the ranch will be yours when it is paid for so you have got to stay with us.'" He further said "My father told me that nobody would take that 30 acres from me, he said 'you stay there with your mother because I don't know how I am going to come out, whether I will still come out of the hospital or not, you stay there with your mother and make sure that ranch is operated properly and nobody will take that 30 acres from you.' . . . After my father passed away I asked my mother one day, I said 'now ma, how is this deal that we had between you and pop about this 30 acres being mine when the ranch is paid for. Is that still going to go on?' She said, 'why sure, that will always go on.'" There was at least a technical disparity between the testimony as to the interest which respondent was to receive and the finding by the court that this interest was to be an undivided one-half interest.

The court filed a memorandum opinion upon this point, which apparently had become a center of controversy, the appellant contending that under the evidence the agreement lacked certainty in the matter of description to a point rendering it unenforcible. The court declared it to be a matter of common knowledge that in Stanislaus and San Joaquin Counties "many of the 'Old Country' Portuguese and Italian farmers have difficulty in understanding the meaning of the term 'undivided one-half interest' and are accustomed to refer to such an interest by acreage, e.g., to refer to an undivided one-half interest in a sixty-acre ranch as 'thirty acres in that ranch.' Of this the court takes judicial notice and so holds that the promise to convey thirty acres is equivalent to a promise to convey an undivided one-half interest

in the sixty acres." The position of appellant is that such a matter is not the proper subject of judicial notice; that there is no testimony from which the court could infer without the aid of the judicial notice which the court claimed it could take that the agreement had been for an undivided one-half interest or for any other than the 30 acres out of 60, and that consequently the finding of the court as to the undivided one-half interest is without support in the evidence, leaving the contract too uncertain for specific enforcement.

But we think it unnecessary to consider this contention further for the reason that the court found that the agreement was for an undivided one-half interest and if this finding is supported by the evidence, as we think it is, then we could not assume that the court relied upon the matter of judicial knowledge, so that if it was wrong therein the judgment would have to be reversed. On the contrary, there was ample testimony from which the court could conclude, as it did, that the true intent of the parties was exactly that found by the court. There is substantial evidence that from shortly before his majority until well into adult manhood respondent had toiled hard and faithfully to develop the land, place it under intensive cultivation and pay off the secured debt, and that in this he had succeeded in great degree; that he did this in reliance upon the promise of his parents, although other children of theirs had left and gone about their own affairs; that to bring about this result he had not only performed the hard labor involved but in off seasons and over hours had worked endlessly to obtain more money than the ranch itself produced and had devoted the sums so earned to the fulfillment of his agreement. A court justifiably convinced of the truth of these matters will not for light reasons lend its aid to an effort to deprive respondent of the legitimate fruits of faith and industry. Such a result would be in fraud of respondent's rights. Turning again to the testimony we find that although no witness described the interest respondent was to receive in the exact terminology of the conveyancer, yet the sense of it accords with the trial court's finding. Thirty of 60 acres is a half of 60 acres and an award of an undivided one-half interest in 60 acres is within the embrace of the terms used by the parties to state their agreement. Also the court was entitled to consider that these people had lived together upon the property through

the years of respondent's performance and there arose no discussion as to the necessity of ever running a survey line to physically divide the property; nor as to possible inequality, if such a division were made arising from development of one part in such a way as to render it more or less valuable than another, when such division should be made. This very lack of discussion indicates an agreement that physical division was not what had been agreed upon and that undivided ownership was. Irrigation of the whole was provided for and carried on and there is no evidence of plan or discussion as to adaptability of this system to severed parcels. From all of the evidence the trial court must have been and no doubt was of the belief that a contract had been made, and if the terminology used left the true meaning doubtful it was the province of the trial court, from all the evidence, to find the parties' intent by the words used. If supported by the testimony and legitimate inferences that could be drawn therefrom, this finding cannot be disturbed on appeal. (*Treadwell* v. *Nickel,* 194 Cal. 243, 261 [228 P. 25] ; *Hammond Coal Co.* v. *Lewis,* 248 Mass. 499 [143 N.E. 309] ; 3 Williston on Contracts, 1936 rev. ed., p. 1774; Restatement of Contracts, § 226.) We hold that the trial court's findings as to the contract are supported by the evidence without resort to any matter of judicial notice.

Appellant further contends the judgment must be reversed for insufficiency of the evidence in matters apart from the claim that judicial notice was unlawfully taken, but we think we have sufficiently answered these contentions generally by what has been said and by what appears in the statement of facts we have made.

Some further contentions will now be discussed. ▮ Appellant complains that testimony was admitted over objection of conversations held with, and statements made by, Cologero Baggesi out of the presence of appellant. The objection was that the testimony would be hearsay and not binding upon her. Assuming this to be true, the testimony was admissible in proving the contract as an admission against interest by one of the parties thereto and it is not to be assumed on appeal that the trial court did not take all these matters into consideration when it made its decision. ▮ Appellant further contends that without this so-called hearsay testimony, the judgment lacks support, but this is contrary to the record, since the testimony of respondent as to the making of the contract, as to the participation therein in the first instance by appellant and as to her affirmations thereof after the death

of Cologero, is full and clear and sufficient in itself to furnish the necessary support.

Although acknowledging that an oral contract to transfer an interest in real property will be enforced if there has been substantial part performance (*Trout* v. *Ogilvie*, 41 Cal. App. 167 [182 P. 333] ; *Baker* v. *Bouchard*, 122 Cal.App. 708 [10 P.2d 468] ; Restatement of Contracts, § 197), appellant contends that to come within this exception to the general statute of frauds a party claiming enforcement must show a performance in reliance upon the verbal agreement. ██ But, as we have pointed out, the evidence was full and complete to the effect that for years respondent did perform in reliance upon the agreement and did irrevocably change his position as a consequence of such reliance. ██ It may be stated in addition, in connection with the contention based on the statute of frauds, that the statute was not urged in demurrer, nor pleaded in the answer nor asserted during the course of the trial, and under such circumstances cannot be relied on here. (*Aaker* v. *Smith*, 87 Cal.App.2d 36, 43 [196 P.2d 150].) In that case the court said: "But defendants are in no legal position to raise the point. The complaint alleged that the agreement was oral. [The same is true here.] Defendants failed to demur, nor did they plead the statute of frauds in their answer. When the oral testimony was introduced they made no objection. They now seek to raise the defense of the statute of frauds for the first time on appeal. Under such circumstances they must be deemed to have waived the defense."

No other contentions require specific treatment.

The judgment is affirmed.

Adams, P. J., and Peek, J., concurred.