[No. E043770. Fourth Dist., Div. Two. Dec. 16, 2008.]

In re the Marriage of MICHAEL W. BROOKS and ANNIKKAWA A. ROBINSON.
MICHAEL W. BROOKS, Appellant, v.
ANNIKKAWA A. ROBINSON, Respondent;
EXECUTIVE CAPITAL GROUP, INC., Respondent.

**COUNSEL**

Michael Brooks, in pro. per., for Appellant.

Somers & Somers and Richard B. Somers for Respondent Executive Capital Group, Inc.

No appearance for Respondent Annikkawa A. Robinson.

**OPINION**

**KING, J.—**

## I. INTRODUCTION

After Michael W. Brooks and Annikkawa A. Robinson were married, Robinson took title to certain residential property solely in her name without reference to the marital relation. Brooks agreed that title would be held in

Robinson's name. When they separated, Robinson moved out and Brooks remained in the house. Shortly before Brooks filed a petition for dissolution of their marriage, Robinson sold the property to Executive Capital Group, Inc. (ECG). Brooks then filed a "Complaint for Joinder" against ECG for a declaration that the property was community property and requesting that the transaction be set aside because he had not joined in the conveyance. The issues raised by the complaint for joinder were bifurcated from the family law proceedings and tried to the court. The court rejected Brooks's claims and entered judgment for ECG. We affirm.

## II. SUMMARY OF FACTS[1]

Brooks and Robinson were married in 1997. In October 2000, they purchased a home in San Bernardino (the Property). The money for the downpayment was paid from Brooks's earnings; Robinson did not contribute any money. Their real estate agent recommended that title be taken solely in Robinson's name because it would be easier to obtain financing for the purchase. Brooks agreed.

The grant deed to the Property recites that title is held by "ANNIKKAWA A. ROBINSON, a Single Woman." The deed was recorded with the San Bernardino County Recorder in November 2000. Although Brooks knew that title was being taken in Robinson's name only, he did not know that the deed included the phrase, "a Single Woman."

Two deeds of trust against the Property recite that the trustor is "ANNIKKAWA A. ROBINSON, A SINGLE WOMAN," and are executed solely by her. Brooks testified that he made the payments on the loans secured by the two deeds of trust.

In February 2005, Brooks and Robinson separated. Robinson moved out and Brooks continued to live on the Property with their seven-year-old son. Initially, Brooks testified that he did not have "a clue" as to where Robinson went. Later, he testified that she had moved in with a friend named Geneva.

Around the time they separated, the Property was, according to Brooks, "in foreclosure." Robinson contacted Brandon Floyd, an employee of ECG. ECG

---

[1] Brooks's opening brief on appeal includes a statement of facts without any citation to the record. In the argument portion of the brief, references to facts are occasionally, but not consistently, supported by citations to the record. ECG's respondent's brief, which relies extensively upon facts developed at trial, does not include a single citation to the record. The failure to include citations to the record violates rule 8.204(a)(1)(C) of the California Rules of Court: Briefs must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears." Although these failures subject the briefs to being stricken, we have elected to disregard the noncompliance. (Cal. Rules of Court, rule 8.204(e)(2)(C).)

is in the business of purchasing distressed properties; that is, properties that are the subject of foreclosure proceedings. In late March 2005, Floyd and his supervisor, Rene Garcia, met with Robinson at the Property.

Brooks, on the one hand, and Garcia and Floyd on the other, presented conflicting testimony of what happened at the March meeting. Brooks testified as follows. He participated in the meeting along with Robinson, Floyd, and Garcia. Robinson introduced him to Floyd and Garcia *as her husband*. He told Garcia that he "wanted to refinance." Garcia said that "they didn't do refinances," they "purchased houses," and offered to purchase the property for $48,000. Brooks told Garcia that he "wouldn't go for that." He also told them that the Property was community property and that he refused to sell. Nevertheless, Garcia asked Brooks to take him through the house to look at it, and Brooks did so. Robinson stayed in the living room. After showing the house to Garcia, Garcia ignored Brooks and talked only to Robinson. Eventually, Brooks became angry and "called him some words. Called him a snake." Brooks remained with the others during the entire meeting, which lasted more than one hour.

Garcia testified about the March meeting as follows. He and Floyd met with Robinson at the Property. He was not introduced to Brooks, and Brooks did not speak to him. Brooks was in the living room, away from the others, just "standing there and mumbling in the background." He talked with Robinson about the house and "did a walkthrough" with her. This meeting lasted approximately 15 or 20 minutes.

Garcia further testified that he dealt exclusively with Robinson because he only deals with the owner of the property. He believed that she was the sole owner of the property based upon his search of the record title and the language in the grant deed and deeds of trust. When he asked Robinson about the man he saw in the house during the meeting, Robinson told him he was "just a tenant."[2] Robinson never gave him any indication that she was married.

Floyd's testimony regarding the March meeting was consistent with Garcia's testimony. According to Floyd, Robinson contacted him. He and Garcia then met with her at the Property. Brooks was "somewhere standing around the house. Just hanging out." He was not introduced to Brooks and did not talk with him. He talked with Robinson about comparable sales in the area. No one at the meeting said anything to indicate that the Property was community property or that Brooks was Robinson's husband.

---

[2] At a pretrial hearing in this matter, Garcia (who does not appear to have been under oath at the time) told the court that when he asked Robinson "who that guy was," Robinson told Garcia that the man was "her boyfriend." At trial, Garcia testified that the "boyfriend" statement was incorrect.

Garcia and Floyd met with Robinson a second time on April 7, 2005. This meeting took place at Geneva's home, where Robinson was staying. During this meeting, Robinson signed a "Home Equity Sales Contract" to sell the Property to ECG for $121,520. She also filled out and signed a "Statement of Information" form. In a space on this form for listing the name of a husband, Robinson wrote, "N/A." Regarding former marriages, she wrote, "None." During this meeting, Robinson told Floyd that the "tenant" was supposed to be out of the house by a certain date in April 2005.

On April 14, 2005, Robinson and ECG entered into an amendment to the home equity sales contract by which the sales price was increased to $142,000. On the same day, Robinson executed a grant deed to the Property to ECG. After deducting for the payoff of loans and other expenses, Robinson received $41,851.03. The deed was recorded on April 19, 2005.

On April 21, 2005, Brooks filed a petition for dissolution of the marriage.

On May 1, 2005, Floyd and Garcia went to the Property to see if the "tenant" had moved out and to inspect for repairs. There, they met Brooks and told him that Robinson sold the Property to them. Brooks told them that he was Robinson's husband and had a community property interest in the Property. Garcia testified that this was the first time he had any knowledge that Brooks was Robinson's husband.

ECG commenced an unlawful detainer action against "Annikkawa Robinson and Mike Robinson." In that proceeding, ECG was awarded possession of the property.[3]

In January 2006, Brooks filed a "Complaint for Joinder" in his marital dissolution case alleging five causes of action against ECG, styled as "Declaration of Community Property," "Injunctive Relief," "Setting Aside the Sale," "Cancellation of Deed," and "Constructive Trust."[4] As is relevant here, Brooks alleges, in essence, that he holds a community property interest in the Property and that the deed from Robinson to ECG is invalid. In addition to other relief, Brooks sought an order setting aside the sale of the property to ECG and cancelling the deed from Robinson to ECG.

A bench trial on the issues raised by the complaint for joinder was bifurcated from the family law proceedings. The court did not expressly

---

[3] No one has asserted that the judgment in the unlawful detainer case has any effect on the issues in this appeal.

[4] The complaint named Robinson, as well as ECG, as a defendant as to each cause of action except for the cause of action for "Cancellation of Deed." The pleading included a sixth cause of action for "Breach of Fiduciary Duty" against Robinson only. Brooks dismissed Robinson from the action on the first day of trial.

determine whether the Property was a community property asset. The court found that "ECG is a [bona fide purchaser] with respect to purchase of the Property and takes it[s] title free of any unknown community property claim Brooks may have with respect to the Property."

## III.  ANALYSIS

■  Title to community real property cannot be conveyed by one spouse to a third party unless the other spouse joins in the execution of the deed. (See Fam. Code, § 1102, subd. (a).)[5] A conveyance in violation of this rule is generally voidable by the spouse who did not join in the conveyance. (*Andrade Development Co. v. Martin* (1982) 138 Cal.App.3d 330, 335–336 [187 Cal.Rptr. 863].) However, a deed to community real property given to a third party purchaser is presumed valid if the purchaser received the deed "in good faith without knowledge of the marriage relation." (Fam. Code, § 1102, subd. (c)(2).) Moreover, " 'a bona fide purchaser for value who acquires his interest in real property without notice of another's asserted rights in the property takes the property free of such unknown rights. [Citations.]' [Citations.]" (*Melendrez v. D & I Investment, Inc.* (2005) 127 Cal.App.4th 1238, 1251 [26 Cal.Rptr.3d 413].)

Here, the court found that ECG was a bona fide purchaser of the Property and that it therefore held title free of Brooks's claim. Brooks challenges this finding. He argues that, even if his testimony is rejected and we accept the testimony of Garcia and Floyd, ECG knew, at a minimum, that Robinson was an absentee owner and that Brooks was in possession of the Property. Because they knew that he held possession, Brooks contends that ECG had a duty to inquire of him as to his interest in the Property and is charged with knowledge of his rights in the property. The applicable rule, he explains, is stated in *Pacific Gas & Elec. Co. v. Minnette* (1953) 115 Cal.App.2d 698 [252 P.2d 642]: " 'Possession of land is notice to the world of every right that the possessor has therein, legal or equitable; it is a fact putting all persons on inquiry as to the nature of the occupant's claims.' [Citation.] 'Except in so far as the rule has been varied by statute, actual possession of land is such notice to all the world, or to anyone having knowledge of such possession, as will put on inquiry those acquiring title or a lien on the land to ascertain the nature of the right that the occupant has in the premises. The presumption is that inquiry of the possessor will disclose how and under what right he holds

---

[5] Family Code section 1102, subdivision (a), provides that, except as provided in certain statutes not applicable here, "either spouse has the management and control of the community real property, whether acquired prior to or on or after January 1, 1975, but both spouses, either personally or by a duly authorized agent, must join in executing any instrument by which that community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed, or encumbered."

possession, and, in the absence of such inquiry, the presumption is that, had such inquiry been made, the right, title, or interest under which the possessor held would have been discovered. The notice which the law presumes has been held to be actual, and not merely constructive, notice. Possession is notice not only of whatever title the occupant has but also of whatever right he may have in the property, *and the knowledge chargeable to a person after he is put on inquiry by possession of land is not limited to such knowledge as would be gained by examination of the public records.*' [Citations.]" (*Id.* at pp. 705–706; see also *Scheerer v. Cuddy* (1890) 85 Cal. 270, 273 [24 P. 713]; *Claremont Terrace Homeowners' Assn. v. United States* (1983) 146 Cal.App.3d 398, 408 [194 Cal.Rptr. 216].)

ECG argues it is a bona fide purchaser who took the Property in good faith without knowledge of the marital relation or of Brooks's purported interest in the Property. ECG does not, however, address Brooks's argument that even if ECG did not have actual knowledge of his interest in the property, it was told that Brooks was a tenant and aware that he held possession, and that ECG is therefore charged with the knowledge that would have been disclosed upon inquiry to Brooks.

■ ECG also relies heavily upon Evidence Code section 622, which provides that "facts recited in a written instrument are conclusively presumed to be true as between the parties thereto . . . ." This section is based upon the doctrine of estoppel by contract; i.e., a party to a contract is generally estopped to deny essential facts recited therein. (*Estate of Wilson* (1976) 64 Cal.App.3d 786, 801 [134 Cal.Rptr. 749]; *Gas App. S. Co. v. W. B. Bastian Mfg. Co.* (1927) 87 Cal.App. 301, 306 [262 P. 452].) ECG's reliance on this presumption is misplaced because it applies "as between the parties" to written instruments. (Evid. Code, § 622.) It does not apply to persons who are not parties to the instrument. (*Henneberry v. Henneberry* (1958) 164 Cal.App.2d 125, 132 [330 P.2d 250]; *Franklin v. Dorland* (1865) 28 Cal. 175, 178.) Brooks is not a party to any of the written instruments involved in this case. Thus, Evidence Code section 622 has no application here.

Based upon the arguments and authorities presented in the parties' briefs, there appears to be merit to Brooks's contention that ECG is charged with whatever knowledge it would have acquired from inquiry made to Brooks. If Brooks does have an interest in the property, it would thus further appear that ECG's title is subject to whatever interest Brooks has in the property and that such title is voidable by Brooks. However, we do not need to reach these issues because, as we explain below, Brooks did not have an interest in the property as a matter of law.

■ There is a presumption regarding the characterization of property that was not addressed in the parties' initial briefs. According to the "form of

title" presumption, the description in a deed as to how title is held is presumed to reflect the actual ownership interests in the property. (*In re Marriage of Haines* (1995) 33 Cal.App.4th 277, 292 [39 Cal.Rptr.2d 673] (*Haines*); see *In re Marriage of Broderick* (1989) 209 Cal.App.3d 489, 496 [257 Cal.Rptr. 397].) This common law presumption is codified in Evidence Code section 662, which provides: " 'The owner of the legal title to property is presumed to be the owner of the full beneficial title. This presumption may be rebutted only by clear and convincing proof.' " (*Haines, supra,* at p. 294.) The presumption is based "on promoting the public 'policy . . . in favor of the stability of titles to property.' [Citation.] 'Allegations . . . that legal title does not represent beneficial ownership have . . . been historically disfavored because society and the courts have a reluctance to tamper with duly executed instruments and documents of legal title.' [Citation.]" (*Ibid.*) Thus, "in the absence of any showing to the contrary, the status declared by the instrument through which [the parties] acquired title is controlling." (*Knego v. Grover* (1962) 208 Cal.App.2d 134, 141 [25 Cal.Rptr. 158]; see generally Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2008) ¶ 8:32, p. 8-8.1.)

The applicability or inapplicability of the form of title presumption is essential to resolving the threshold issue of whether the Property is community property or Robinson's separate property. (See, e.g., *MacKay v. Darusmont* (1941) 46 Cal.App.2d 21, 26 [115 P.2d 221] [to set aside a conveyance of property on the ground that it was made in violation of the right to join in the conveyance, spouse "must establish that it was community property"].) If this presumption applies and there is insufficient evidence in the record to rebut the presumption, then title to the Property at the time of the sale to ECG was held solely by Robinson as a matter of law, and Brooks's claims necessarily fail.

Pursuant to Government Code section 68081, we requested supplemental briefing on two questions relating to this presumption. First, whether the subject property is presumed to be the separate property of Robinson because title is held in her name without reference to the marital relationship or to Brooks. For this question, we referred the parties to Evidence Code section 662 and to a section of Miller and Starr's treatise on California real estate that states: "Where one spouse takes title to property in his or her name, without reference to the marital relationship or the other spouse, it is presumed that the property is the separate property of the spouse who holds title." (5 Miller & Starr, Cal. Real Estate (3d ed. 2006) § 12:41, p. 12-110, fn. omitted.) Second, if such presumption arose in this case, whether there is evidence in the record to rebut the presumption.

ECG filed a supplemental brief, which essentially reproduced and expanded upon its discussion of Evidence Code section 622, but offered no

discussion of Evidence Code section 662. As explained above, Evidence Code section 622 does not apply to this case.

In his supplemental brief, Brooks concedes that when Robinson took title to the property solely in her name, a presumption arose that the property was Robinson's separate property. (He also acknowledges that ECG had raised in the trial court the issue of whether the Property was Robinson's separate property.) Regarding the question of whether there is evidence in the record to rebut this presumption, he points to evidence that he and Robinson were married in 1997, prior to the time Robinson took title to the property. Evidence of their marriage, he asserts, "effectively rebutted the separate property presumption and created the presumption that the property is and was community property at the time of purchase in the absence of any evidence to the contrary." (See Fam. Code, § 760.) Brooks argues, in essence, that the general community property presumption that arises when property is acquired during marriage negates the presumption arising from the form of title.

■ The relationship between the general community property presumption and the form of title presumption was discussed in *In re Marriage of Lucas* (1980) 27 Cal.3d 808 [166 Cal.Rptr. 853, 614 P.2d 285] (*Lucas*). The *Lucas* court stated: "The presumption arising from the form of title is to be distinguished from the general presumption set forth in [Family Code section 760] that property acquired during marriage is community property. *It is the affirmative act of specifying a form of ownership in the conveyance of title that removes such property from the more general presumption.*" (*Id.* at pp. 814–815, italics added; see also *Siberell v. Siberell* (1932) 214 Cal. 767, 773 [7 P.2d 1003] [community property presumption "has no application to a case where 'a different intention is expressed in the instrument' "].) In *Lucas*, a motor home was paid for with both community funds and the wife's separate funds. (*Lucas, supra*, at p. 817.) The wife "wished to have title in her name alone, and [the husband] did not object. The motorhome was purchased for family use and was referred to and used by the parties as a 'family vehicle.' " (*Id.* at pp. 817–818.) The Supreme Court upheld the trial court's determination that the motor home was the wife's separate property because "[t]itle was taken in [the wife's] name alone. [The husband] was aware of this and did not object." (*Id.* at p. 818.)[6] Thus, the mere fact that property was acquired during marriage does not, as Brooks argues, rebut the form of title presumption; to the contrary, the act of taking title to property in the name of one spouse during marriage with the consent of the other spouse effectively removes that property from the general community property

[6] When the spouse who is not the record title holder was unaware that title was taken solely in the name of the other spouse, the form of title presumption does not apply. (See *In re Marriage of Rives* (1982) 130 Cal.App.3d 138, 162 [181 Cal.Rptr. 572].)

presumption. In that situation, the property is presumably the separate property of the spouse in whose name title is taken. (See generally 5 Miller & Starr, Cal. Real Estate, *supra*, § 12:41, p. 12-110; Hogoboom & King, Cal. Practice Guide: Family Law, *supra*, ¶ 8:33, p. 8-9.)

Brooks contends that *Lucas* is not valid authority because it has been superseded by statutes. Indeed, the Legislature enacted several statutes in response to *Lucas*, including what is now codified as Family Code sections 2581 and 2640 (Civ. Code, former §§ 4800.1, 4800.2, respectively).[7] (See *In re Marriage of Kahan* (1985) 174 Cal.App.3d 63, 71–72 [219 Cal.Rptr. 700]; Recommendation Relating to Civil Code Sections 4800.1 and 4800.2 (Dec. 1985) 18 Cal. Law Revision Com. Rep. (1986) pp. 387–388.) As we explain below, however, these statutes supersede aspects of *Lucas* that are unrelated to the analysis and holding we rely upon.

In addition to the characterization of the motor home in *Lucas*, the parties disputed the character of a residence. The residence had been purchased in part with the wife's separate property and in part with community funds. (*Lucas, supra*, 27 Cal.3d at pp. 811–812.) Title to the residence was taken in the names of both spouses, " 'Husband and Wife as Joint Tenants.' " (*Id.* at p. 811.) At the time *Lucas* was decided, Civil Code section 164 provided: " '[W]hen a single family residence of a husband and wife is acquired by them during marriage as joint tenants, for the purpose of the division of such property upon divorce or separate maintenance only, the presumption is that such single family residence is the community property of said husband and wife.' " (*Lucas, supra*, at p. 814.) Based upon this statute, the court held that in the absence of an agreement that the wife was to retain a separate property interest in the residence, her separate property contributions were to be treated as a gift to the community for which she was not entitled to a credit or reimbursement when the property is divided in dissolution. (*Id.* at

---

[7] In its current form, Family Code section 2581 provides: "For the purpose of division of property on dissolution of marriage or legal separation of the parties, property acquired by the parties during marriage in joint form, including property held in tenancy in common, joint tenancy, or tenancy by the entirety, or as community property, is presumed to be community property. This presumption is a presumption affecting the burden of proof and may be rebutted by either of the following: [¶] (a) A clear statement in the deed or other documentary evidence of title by which the property is acquired that the property is separate property and not community property. [¶] (b) Proof that the parties have made a written agreement that the property is separate property."

Family Code section 2640, subdivision (b), currently provides: "In the division of the community estate under this division, unless a party has made a written waiver of the right to reimbursement or has signed a writing that has the effect of a waiver, the party shall be reimbursed for the party's contributions to the acquisition of property of the community property estate to the extent the party traces the contributions to a separate property source. The amount reimbursed shall be without interest or adjustment for change in monetary values and may not exceed the net value of the property at the time of the division."

pp. 816–817.) This aspect of *Lucas* was "widely perceived as unfair by the public as well as by family law professionals." (Recommendation Relating to Civil Code Sections 4800.1 and 4800.2, *supra*, 18 Cal. Law Revision Com. Rep. (1986) at p. 387.)

In response to this holding, Civil Code former sections 4800.1 and 4800.2 were enacted "to provide that (1) all property held in joint tenancy form by the spouses is presumed community absent a written agreement otherwise and (2) all community property is divided subject to a right of reimbursement for separate property contributions absent an express agreement otherwise." (Recommendation Relating to Civil Code Sections 4800.1 and 4800.2, *supra*, 18 Cal. Law Revision Com. Rep. (1986) at p. 388.) These statutes thus superseded the *Lucas* decision to the extent *Lucas* held that, for purposes of division of property at dissolution, separate property contributions to the community were treated as gifts and were not reimbursable. The analysis and holding of *Lucas* that we rely upon was unaffected by these statutes, and the case remains, for our purposes, good law.

■ Moreover, the new statutes clearly have no application to this case. Family Code section 2581 (the recodification of Civ. Code, former § 4800.1) applies only to the "division of property on dissolution of marriage or legal separation of the parties." (Fam. Code, § 2581.) This case concerns a dispute between Brooks and ECG, and does not involve the division of property on dissolution. Even if this case did concern such a division of property, the section creates a presumption of community property for property that is "acquired by the parties during marriage *in joint form, including property held in tenancy in common, joint tenancy, or tenancy by the entirety, or as community property*." (*Ibid.*, italics added.) Thus, property taken in the form of joint tenancy, for example, is presumed to be community property for purposes of the division of property. Here, the subject property was not acquired in any style of joint form. It was unambiguously acquired by Robinson in her name only.

Family Code section 2640 (the recodification of Civ. Code, former § 4800.2) also applies only to "the division of the community estate," and creates a right to reimbursement for a spouse who made separate property contributions to the community. (Fam. Code, § 2640, subd. (b); see *In re Marriage of Weaver* (2005) 127 Cal.App.4th 858, 867–868 [26 Cal.Rptr.3d 121].) Again, this bifurcated case does not involve a division of the community estate between Brooks and Robinson. Whether Robinson might be obligated to reimburse Brooks for his contributions to the Property was not before the trial court and is not an issue on appeal. The statute has no application here.

Significantly, the Legislature rejected a recommendation by the California Law Revision Commission to supersede the aspect of *Lucas* upon which we do rely and to eliminate the form of title presumption. In 1983, the commission recommended that a new Civil Code section 5110.630 (section 5110.630) be enacted to provide: "Except as otherwise provided by statute, the form of title to property acquired by a married person during marriage does not create a presumption or inference as to the character of the property, and is not in itself evidence sufficient to rebut the presumptions established by this article." (Recommendation relating to Marital Property Presumptions and Transmutations (Nov. 1983) 17 Cal. Law Revision Com. Rep. (1984) p. 221.) In its recommendation, the Law Revision Commission specifically criticized the *Lucas* court's conclusion that the parties' motor home was the wife's separate property. (*Id.* at p. 211.) According to the Law Revision Commission, the law should "be revised not only to eliminate the title presumptions but also to overrule the title inferences of separate property." (*Id.* at p. 212.) In 1984, legislation was introduced to enact section 5110.630 as proposed by the Law Revision Commission, along with other recommended statutes regarding transmutation of marital property. (Assem. Bill No. 2274 (1983–1984 Reg. Sess.) § 6.) The Estate Planning, Trust and Probate Law Section of the State Bar of California opposed the proposed elimination of the form of title presumption, stating "the form of title should create a presumption as to the character of the property. When property, for example, is taken in the name of a wife as her sole and separate property, it is the intent for the parties that it be so treated." (Estate Planning, Trust and Probate Law Section, State Bar of Cal., letter to Assemblyman Alister McAlister, Feb. 28, 1984, p. 4.) Citing this opposition and other comments to the proposed statute, the Law Revision Commission requested that the bill be amended to omit section 5110.630. (Cal. Law Revision Com., letter to Assemblyman Alister McAlister, Mar. 22, 1984.) The legislation was so amended, leaving only the proposed statutes concerning transmutation, and became law without affecting the form of title presumption or superseding the aspect of *Lucas* upon which we rely. (See Amend. to Assem. Bill No. 2274 (1983–1984 Reg. Sess.) Apr. 3, 1984.)

The form of title presumption affects the burden of proof. (*Haines, supra,* 33 Cal.App.4th at p. 297 & fn. 11; cf. *In re Marriage of Ashodian* (1979) 96 Cal.App.3d 43, 47 [157 Cal.Rptr. 555].) That is, the party asserting that title is other than as stated in the deed (here, Brooks) has the burden of proving that fact by clear and convincing evidence. (*In re Marriage of Weaver* (1990) 224 Cal.App.3d 478, 486–487 [273 Cal.Rptr. 696]; *Haines, supra,* at p. 297; Evid. Code, § 662.) The presumption can be overcome only by evidence of an agreement or understanding between the parties that the title reflected in the deed is not what the parties intended. (*Lucas, supra,* 27 Cal.3d at p. 813; *In re Marriage of Munguia* (1983) 146 Cal.App.3d 853, 860 [195 Cal.Rptr.

199].) Significantly, "the presumption cannot be overcome solely by tracing the funds used to purchase the property, nor by testimony of an intention not disclosed to the grantee at the time of the execution of the conveyance." (*In re Marriage of Broderick, supra,* 209 Cal.App.3d at p. 496; see also *Gudelj v. Gudelj* (1953) 41 Cal.2d 202, 212 [259 P.2d 656]; *Lucas, supra,* at p. 813.) Nor can the presumption be rebutted by evidence that title was taken in a particular manner merely to obtain a loan. (Cf. *In re Marriage of Kahan, supra,* 174 Cal.App.3d at p. 69 [when title was taken by spouses as joint tenants to obtain loan, property was presumptively held in joint tenancy].)

To overcome the form of title presumption, the evidence of a contrary agreement or understanding must be "clear and convincing." (Evid. Code, § 662; cf. *In re Marriage of Weaver, supra,* 224 Cal.App.3d at p. 486.) This standard requires evidence that is " ' " 'so clear as to leave no substantial doubt' [and] 'sufficiently strong to command the unhesitating assent of every reasonable mind.' " ' " (*In re Marriage of Weaver, supra,* at p. 487.)[8]

We now apply these principles here. With Brooks's knowledge and agreement, title to the Property was taken solely in Robinson's name. The affirmative act of specifying that title be held in that manner removed the property from the general presumption of community property and made the Property presumptively Robinson's separate property. Brooks could rebut this presumption by clear and convincing evidence of an agreement or understanding between him and Robinson that the Property was to be held as community property (or as his separate property). He presented no such evidence. In his supplemental brief addressing this question, he points only to the fact that the parties were married at the time Robinson acquired the Property. This fact, however, has no bearing on whether the two agreed or understood that they would hold the Property as community property.

Nor does other evidence in the record support the existence of the requisite understanding or agreement. Brooks testified that the money used for the downpayment toward the purchase price came from his employment earnings and that Robinson did not contribute money toward the purchase. As stated above, however, the form of title presumption cannot be overcome by simply tracing the source of the funds used to purchase the property. He further testified that he believed the Property belonged to him and Robinson. Such a unilateral belief, however, is likewise insufficient to establish the existence of an agreement or understanding between the spouses as to ownership of the Property. There is no evidence in the record that Robinson held a similar

---

[8] The form of title presumption does not apply when it conflicts with the presumption of undue influence by one spouse over the other. (*Haines, supra,* 33 Cal.App.4th at pp. 301–302.) Here, there is no contention that title to the Property in Robinson's name was due to any undue influence exerted by Robinson.

understanding regarding ownership of the property. Indeed, Robinson's subsequent sale of the Property to ECG without seeking Brooks's consent indicates that she understood that the Property was her separate property.

Brooks is not helped by his testimony that the purpose of taking title in Robinson's name was to facilitate financing for the Property. This merely explains why Brooks was willing to allow Robinson to have sole title to the Property. Having a reason for allowing title to be taken solely in Robinson's name does not diminish the inference that the parties intended the Property to be Robinson's separate property. Indeed, it supports the conclusion that the form of title was not inadvertent, but rather that the parties expressly intended such a result. Most significantly, the proffered reason does not constitute evidence of an agreement between the spouses that the Property be community property.

Brooks further contends that our conclusion is based upon a transmutation of community property to Robinson's separate property for which there is no supporting evidence. He relies upon Family Code section 852, subdivision (a), which provides: "A transmutation of real or personal property is not valid unless made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected." The Law Revision Commission recommended this statute (originally codified as Civ. Code, former § 5110.730, subd. (a)) to impose " 'formalities on interspousal transmutations for the purpose of increasing certainty in the determination whether a transmutation has in fact occurred.' " (*Estate of MacDonald* (1990) 51 Cal.3d 262, 268 [272 Cal.Rptr. 153, 794 P.2d 911], quoting Recommendation Relating to Marital Property Presumptions and Transmutations, *supra*, 17 Cal. Law Revision Com. Rep. (1984) at pp. 224–225.)

The argument is misplaced because there are no facts suggesting a transmutation, valid or otherwise, and our holding is not based upon, and does not imply, a transmutation. "A 'transmutation' is an *interspousal* transaction or agreement that works to change the character of property the parties' *already own*. By contrast, the *initial acquisition* of property from a third person does *not* constitute a transmutation and thus is not subject to the [Family Code section 852, subdivision (a)] transmutation requirements [citation]." (Hogoboom & King, Cal. Practice Guide: Family Law, *supra*, ¶ 8:471.1, p. 8-129 (rev. # 1, 2008).) Here, the Property was acquired in Robinson's name in a transaction with a third person, not through an interspousal transaction. There is nothing in the record to suggest that Brooks and Robinson ever made any agreement to thereafter change the character of the Property. Therefore, the character of the Property when it was sold to

ECG is the same as when it was first acquired in Robinson's name. Family Code section 852 and case law concerning transmutation simply have no relevance to this case.

■ Brooks's acquiescence in allowing Robinson to take title to the Property solely in her name triggered the presumption that the Property was Robinson's separate property. There is no testimony or other evidence from which a court could infer that Brooks and Robinson had an agreement or understanding that the Property would be other than as stated in the deed. Because there is no evidence in the record to rebut the form of title presumption, the Property was Robinson's separate property as a matter of law. Because each of Brooks's claims is based upon his unsupported assertion that the Property was community property, the claims necessarily fail.

## IV.  DISPOSITION

The judgment is affirmed. The parties shall bear their own costs on appeal.

Ramirez, P. J., and Richli, J., concurred.

A petition for a rehearing was denied January 9, 2009, and appellant's petition for review by the Supreme Court was denied March 25, 2009, S169645.