Filed 07/30/24  King v. Lalanne CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| MARK E. KING, | C096707 |
| Plaintiff and Respondent, | (Super. Ct. No. SCV0044158) |
| v. | |
| CORINNE LALANNE, | |
| Defendant and Appellant. | |

This appeal concerns a partition action brought by plaintiff Mark E. King against his former romantic partner, defendant Corinne Lalanne.  King requested partition of real property by sale and sought to prove he and Lalanne owned the property equally as joint tenants.  Lalanne did not object to partition but maintained that the deeds to the property gave King only a 25 percent interest.  Following a bench trial, the trial court agreed with King and entered an interlocutory judgment ordering partition of the property by sale with King and Lalanne each holding a 50 percent interest.

Lalanne appeals.  She contends the trial court erred for three reasons:  (1) the trial court lacked the authority to resolve King's contract-based claims in a partition action;

1

(2) record title gave King a 25 percent interest in the property and King did not provide sufficient evidence to show otherwise; and (3) any claim King may have had to the property is barred by the statute of frauds.

We disagree with Lalanne and affirm the interlocutory judgment.

FACTUAL AND PROCEDURAL BACKGROUND

A.    *Pleadings*

King filed a complaint against Lalanne for partition by sale of the property.  He alleged that he, Lalanne, and Lalanne's father agreed to purchase the property as equal owners.  Specifically, they agreed father would make the down payment and King would cover necessary remodeling to the house.

The property was purchased in 2014 and title was recorded as " 'Corinne Lalanne an unmarried woman and [father], as joint tenants.' "  King acted in accordance with the above-described agreement.  In April 2016, father deeded his 50 percent interest in the property to " 'Corinne Lalanne and Mark E. King, Joint Tenants with Right of Survivorship' " (the 2016 deed).  At the time the 2016 deed was recorded, Lalanne told King he was now half owner of the property.  Father died in 2017.

Lalanne's answer to King's complaint denied the existence of any agreement with King to purchase the property and denied that she ever relinquished her half interest in the property to King.  She asserted that the deeds gave King only 25 percent of the property.

B.    *Trial*

The matter proceeded to a bench trial, during which Lalanne represented herself.  Below is a summary of the relevant evidence presented, which we derive from the settled statement.

1.    *King's Testimony*

King testified that he and Lalanne first met in 2008, but he doesn't remember exactly when.  A few months after meeting, they moved into a rental unit with father.

2

King was not on the unit's lease and did not pay rent.  About two years after meeting, King and Lalanne began to discuss purchasing a home together.  Neither King nor Lalanne had good credit, so they needed to use father's credit to purchase the home.  King and Lalanne considered 10 to 15 homes before agreeing to make an offer on the property.

King and Lalanne orally agreed as follows:  (1) King would own a 50 percent ownership share of the property; (2) Lalanne and father would own the other 50 percent; (3) father would pay $20,000 for the down payment; and (4) in lieu of contributing funds toward the down payment, King would complete a remodel of the kitchen before anyone moved in.  King acknowledged there was no signed agreement between himself and Lalanne.  Also, King never had any agreements with father about purchasing the property and did not understand that father intended to provide for Lalanne.

The property was purchased in July 2014.  The court admitted evidence of a grant deed dated July 28, 2014 (the 2014 deed) that conveyed the property to "Corinne Lalanne an unmarried woman and [father], as joint tenants."  King was involved in the decision to purchase the property, but he was not on the original deed because of his poor credit.  There are no documents evidencing an attempt by King to purchase the property.

King completed the kitchen remodel before anyone moved in and continued to make improvements to the property, including converting a walk-in closet to a guest bathroom, renovating the master bathroom, updating the master bedroom with new flooring, and performing landscaping in the front yard.  He would not have done this work if he was not a 50 percent owner of the property.  King also paid for the parties' shared household expenses, including cell phones and service, PG&E, solar electricity, internet, Direct TV, Netflix, and gym memberships; he provided an exhibit detailing those expenses, which is not in the appellate record (King's expense exhibit).  And King cared for father who had health issues.  There was no agreement for reimbursement of the expenses or services King covered or provided.

3

King was put on the title to the property in 2016. The court admitted evidence of the 2016 deed in which father granted his 50 percent share of the property to "Corinne Lalanne and Mark E. King, Joint Tenants with Right of Survivorship" for one dollar and other good and valuable consideration. King believed the 2016 deed confirmed and established his 50 percent ownership of the property. Lalanne prepared the deed and told King he owned and deserved one-half of the property. King denied paying the one-dollar consideration indicated in the 2016 deed. After father died, King made one-half of the mortgage payments and would not have done so if he did not believe he owned half the property.

Following an accident, King ended up in the hospital and had an argument with Lalanne. King decided not to return to the property. King stopped making payments toward the mortgage because Lalanne locked him out.

2.    *Lalanne's Testimony*

Lalanne first met King in 2011. King moved into Lalanne's and father's rental unit a few months later. King paid for some of the utilities and expenses but did not pay rent. King never acted as a caregiver for father.

Because of father's declining health, Lalanne and father began exploring the possibility of purchasing a home together. Lalanne and father decided to purchase the home equally so that father would have a place to live out his life. Lalanne, father, and King agreed that King would move into the property. King offered to help update the kitchen. King and Lalanne liked the idea of eventually having a home together as they continued to explore the idea of being life partners.

King was not a party to the property purchase, and he never completed any document connecting him with the purchase. Lalanne believed King was happy to have a place to live. Lalanne and King shared the labors of the house. King contributed to the day-to-day living expenses and helped maintain the property. King's expense exhibit is

4

inaccurate, and there was no agreement for expense reimbursement.  King also used the property's garage to work on vehicles for extra income.

In 2016, father asked King what would happen if Lalanne passed away.  King responded that he would take care of father in Lalanne's place and that they would remain on the property since it was father's home.  King assured father that he would always take care of Lalanne.  Father agreed to give King a portion of his share of the property in exchange for this assurance.  Lalanne and King had someone at a business and tax office fill out the paperwork for the 2016 deed.

King did not contribute to any mortgage payments until the month after father passed away in January 2018.  At that point, King and Lalanne agreed to each contribute around $1,000 per month, but they did not always equally split the mortgage payments.  A total of 87 mortgage payments were made on the property; of these, King contributed the equivalent of 9 to 10 payments.  King and Lalanne never executed any documents memorializing their relationship or any agreement regarding their shared expenses.  Lalanne presented three exhibits regarding property-related expenditures and contributions as well as the value of the property and testified that these exhibits showed that King owed Lalanne money for his share of contributions to the property as a 25 percent owner.

King was injured in a hit-and-run accident in 2019 and was hospitalized for 36 days, during which Lalanne coordinated the community effort to prepare for his discharge.  King elected not to return to the property.  Lalanne did not oust him from the property.

3.    *Other Testimony*

King's friend testified that he helped King with certain remodeling projects on the property in exchange for which King performed repairs on friend's truck.  Friend observed King was an active participant in all the work performed on the property.  Friend did not have a contract with either King or Lalanne and did not document the time

friend worked on the property. Friend thought King and Lalanne acted like husband and wife.

Father's hired caretaker testified that she helped transition father to the property and provided care for him at the property until father's death. King rarely took father to doctor's appointments. Caretaker was present when documents were signed to purchase the property; to her knowledge, King was not a party to the purchase. Caretaker was also present when father signed the 2016 deed, but King was not present. Father was happy knowing that King and Lalanne were together and that Lalanne would be in a stable and happy environment if father passed.

4. *Trial Court's Ruling*

The court found clear and convincing evidence to rebut the presumption that the ownership interests in the property were accurately set forth in the 2014 and 2016 deeds. Specifically, the court found that King and Lalanne believed they were equal joint owners of the property, based on an agreement they made before the property's purchase. The court concluded the parties were joint tenants, each owning a 50 percent share in the property, and ordered that the property be sold with the proceeds divided in accordance with those interests. The court reserved ruling on the parties' rights to offsets or credits until a second phase of trial.

Lalanne timely appealed.

DISCUSSION

The parties do not dispute that according to the 2014 and 2016 deeds, Lalanne owns a 75 percent interest in the property and King owns a 25 percent interest. The trial court found that King rebutted those deeds and showed he owns a 50 percent interest in the property. Lalanne contends the court committed prejudicial error on various grounds. We address each of those grounds separately below, but we begin with a more

6

fundamental issue Lalanne raises concerning the trial court's authority in a partition action.

## I

### Trial Court's Authority in Partition Action

Lalanne contends the trial court lacked the authority to reach the merits of King's claims in his action for partition because King's action was based on contract and King failed to plead an action to quiet title based on contract. We see no merit in this contention.

A co-owner of real or personal property may bring an action for partition. (Code Civ. Proc., § 872.210.) Partition is a statutorily authorized equitable action that confers broad discretion on the trial court to fashion relief without being bound by strict rules of procedure. (*Richmond v. Dofflemyer* (1980) 105 Cal.App.3d 745, 766; *Wallace v. Daley* (1990) 220 Cal.App.3d 1028, 1035.) It permits a co-owner of real or personal property to file an action to terminate and sever common interests in the property to avoid the inconvenience and dissension that can come from sharing joint possession. (*Cummings v. Dessel* (2017) 13 Cal.App.5th 589, 596.) In a suit for partition, "all parties' interests in the property may be put in issue regardless of the record title." (*Milian v. De Leon* (1986) 181 Cal.App.3d 1185, 1196; see *Demetris v. Demetris* (1954) 125 Cal.App.2d 440, 444-445 [in partition suit, "all equities and conflicting claims existing between the parties and arising out of their relation to the property to be partitioned may be adjusted"]; Code Civ. Proc., § 872.610.) And determining those interests may involve ascertaining whether a party has presented evidence to overcome the general presumption that the deed accurately reflects ownership interests. (See *Thomasset v. Thomasset* (1953) 122 Cal.App.2d 116, 133 [property may be found to be other than that indicated by the deed], overruled on another point, *See v. See* (1966) 64 Cal.2d 778, 786; see also *Workmon Constr. Co. v. Weirick* (1963) 223 Cal.App.2d 487, 490 [court of equity can use parol evidence to show real nature of a transaction behind a deed].) Contrary to

7

Lalanne's position, King was not required to provide a case applying these principles to a partition-only action involving facts similar to those presented here.

Lalanne's reliance on Code of Civil Procedure section 872.140 within the partition statutes as limiting the trial court's authority in this case is misplaced. That section allows the trial court to order allowance, accounting, contribution, or other compensatory adjustment among the parties according to principles of equity. (Cf. *Lazzarevich v. Lazzarevich* (1952) 39 Cal.2d 48, 50-51.) It does not negate the power of the court to determine the ownership interests of the parties in the property.

Having resolved this fundamental issue, we turn to Lalanne's other challenges to the trial court's ruling. We divide those challenges into two: (1) Evidence Code section 662 and (2) the statute of frauds.

II

Evidence Code Section 662

Evidence Code section 662 codifies the common law presumption that title is held as described in a deed. (*In re Marriage of Starr* (2010) 189 Cal.App.4th 277, 282.) The statute applies when "there is no dispute as to where *legal* title resides but there is question as to where all or part of the *beneficial* title should rest." (*Murray v. Murray* (1994) 26 Cal.App.4th 1062, 1067.) The presumption can be overcome by evidence of an agreement or understanding between the parties that the title reflected in the deed is not what the parties intended. (*In re Marriage of Brooks & Robinson* (2008) 169 Cal.App.4th 176, 189 (*Brooks*), overruled on another ground in *In re Marriage of Valli* (2014) 58 Cal.4th 1396, 1405.) The contrary agreement can be oral, but the evidence of the agreement must be clear and convincing, so clear as to leave no substantial doubt and sufficiently strong to command the unhesitating assent of every reasonable mind. (*Brooks*, at p. 190; Evid. Code, § 662.)

Here, the trial court found clear and convincing evidence that Lalanne and King believed they were equal joint owners of the property based on an agreement they made

8

before the property was purchased. Lalanne challenges this finding on five grounds, each of which we address below.

A.      *Title Taken to Obtain a Loan*

Lalanne contends the trial court erroneously allowed King to refute the title presumption through evidence that title was taken in a particular manner merely to obtain a loan. Lalanne asserts such a showing cannot overcome the title presumption according to *Brooks, supra*, 169 Cal.App.4th at page 190.

Lalanne misinterprets the trial court's ruling. While the court did recount King's testimony that he and Lalanne agreed he would not be named as a buyer so his poor credit would not impact the property's purchase, the court did not indicate it relied on this fact in reaching its conclusion. Instead, the court stated it found King's testimony regarding the parties' agreement for ownership of the property more credible. As to such an agreement, King testified that the parties agreed he would own a 50 percent share of the property. The court also credited King's testimony regarding his involvement in the purchase, his contribution to shared expenses, and the work he performed to renovate the property, including his claim that he remodeled the kitchen in lieu of a monetary contribution to the down payment. To the extent the trial court's ruling is unclear, we resolve that ambiguity in favor of the trial court's judgment. (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 631.) Because Lalanne misrepresents the trial court's ruling, we need not decide whether Lalanne or *Brooks* present an accurate statement of the law on rebutting title presumption.

B.      *Evidence of Bargained-For Promise*

Lalanne contends there was no evidence of a bargained-for promise between King and Lalanne. In Lalanne's view, King needed to present testimony of an *explicit* exchange between the parties to give King an interest in the property. Not so. "[A] court[] may inquire into the conduct of the parties to determine whether that conduct demonstrates an implied contract . . . or some other tacit understanding between the

9

parties." (*Marvin v. Marvin* (1976) 18 Cal.3d 660, 684.) Evidence of an explicit bargain is not required. Lalanne also makes the related assertion that King's testimony regarding his renovations to the property supported only the parties' understanding of how King would contribute to the property. But this assertion reflects merely Lalanne's interpretation of the evidence, an interpretation the trial court rejected in favor of King's. We next evaluate whether King's interpretation was supported by substantial evidence.

C.     *Clear and Convincing Evidence*

Lalanne contends King failed to present clear and convincing evidence to overcome title presumption. The applicable standard of review requires us to reject this contention.

In reviewing a finding proved by clear and convincing evidence, the appellate court must account for the level of confidence that this standard commands. (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995.) The question before the court is "whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*Id.* at p. 1011) "Substantial evidence is evidence that is 'of ponderable legal significance,' 'reasonable in nature, credible, and of solid value . . . .' [Citation.]" (*Id.* at p. 1006.) The testimony of a single witness may constitute substantial evidence provided it is not physically impossible or inherently improbable. (*People v. Ghobrial* (2018) 5 Cal.5th 250, 281.) And, importantly, the appellate court must "view the record in the light most favorable to the judgment below; it must indulge reasonable inferences that the trier of fact might have drawn from the evidence; it must accept the fact finder's resolution of conflicting evidence; and it may not insert its own views regarding the credibility of witnesses in place of the assessments conveyed by the judgment." (*Conservatorship of O.B.*, at p. 1008.)

Here, Lalanne contends the trial court erroneously credited King's *allegations* of an agreement. Lalanne also contends the trial court erred in relying on King's version of

10

the facts because (1) there were inconsistencies in that version; (2) King's version represented merely his uncorroborated belief that he shared ownership of the property with Lalanne; and (3) King's conduct was consistent with the acts of a live-in romantic partner not an equal property owner. As explained below, we reject these contentions.

Lalanne misrepresents the trial court's ruling because the trial court in fact credited King's *testimony* at trial, not just King's *allegations* in his pleading. The parties' precise testimony at trial was not recorded, so our review is limited to the settled statement, which contains "a concise factual summary of the evidence and the testimony of each witness." (Cal. Rules of Court, rule 8.137(d)(2)(A); see *People ex rel. Department of Public Works v. Bond* (1964) 231 Cal.App.2d 435, 437 [reviewing court must assume enough appears in settled statement to enable it to decide whether reversible error was committed].) The settled statement includes the following evidence that Lalanne and King agreed to equally own the property: King's testimony that he and Lalanne agreed he would own a 50 percent share of the property; King's testimony that he was involved in the decision to purchase the property; King's testimony that the parties agreed he would remodel the kitchen in lieu of contributing to the down payment; King's evidence of his renovations to the property and his testimony that he would not have made those renovations if he was not a 50 percent owner of the property; King's payment of various household expenses; the evidence of King and Lalanne's 8-year cohabitation; and testimony from friend that King and Lalanne acted like husband and wife. These are relevant factors evidencing that "the parties impliedly agreed to share equally in their acquisitions." (*Alderson v. Alderson* (1986) 180 Cal.App.3d 450, 461; see also *Milian v. De Leon, supra*, 181 Cal.App.3d at p. 1197.) And King testified to more than an undisclosed belief in his ownership interest in the property. He testified that he and Lalanne agreed to that interest. The "uncorroborated testimony of a single witness may constitute substantial evidence." (*Casella v. SouthWest Dealer Services, Inc.* (2007) 157 Cal.App.4th 1127, 1144.)

11

It was for the trial court to determine King's and Lalanne's credibility, to weigh any contradictions within their allegations and testimonies, and to decide between their competing accounts. The trial court made those judgments in favor of King, and we cannot substitute our judgment for that of the trial court. (See *People v. Zamudio* (2008) 43 Cal.4th 327, 357 ["Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends"].)

D.    *Father's Interest*

Lalanne contends the trial court's ruling erroneously divested father of his original interest in the property based on an oral agreement to which father was not a party. This contention and Lalanne's analysis in support fail to show prejudicial error.

A trial court's order is presumed correct, and the burden is on the appellant to demonstrate prejudicial error. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.) An error is prejudicial if the reviewing court concludes, based on its review of the entire record, that it is reasonably probable the trial court would have reached a result more favorable to the appellant absent the error. (*Jones v. Farmers Ins. Exchange* (2013) 221 Cal.App.4th 986, 999.) "Reasonable probability" means a reasonable chance, more than an abstract possibility, or a probability sufficient to undermine confidence in the outcome. (*Haytasingh v. City of San Diego* (2021) 66 Cal.App.5th 429, 468.) Even a significant error will not supply cause for reversal if the record demonstrates no other judgment could have been rendered. (See *In re J.R.* (2022) 82 Cal.App.5th 526, 533.)

Here, the trial court found that, prior to purchasing the property, Lalanne and King orally agreed to equally share ownership interest in the property. While King admitted that father was not a party to that agreement, Lalanne's oral agreement with King that the trial court credited gave King half of her interest in the property. Father's subsequent undisputed conveyance of his interest in the property via the 2016 deed increased King's

12

interest in the property to 50 percent.  Thus, there was no reasonable probability the court would have reached a more favorable result to Lalanne.

E.      *Joint Tenancy*

Lalanne contends the trial court had no evidentiary basis to find that she and King held title to the entire property as joint tenants.  Lalanne contends they at most held title to half of the property as joint tenants based on the 2016 deed and as tenants in common as to the rest.  But Lalanne never developed this contention in her opening brief.  For fairness reasons, we refuse to consider her belated attempt to do so in reply.  (*People v. Silveria and Travis* (2020) 10 Cal.5th 195, 255.)

III

*Statute of Frauds*

Lalanne contends the statute of frauds bars King's claim to more than 25 percent of the property and the trial court erred by concluding otherwise.  We find no merit in this contention.

Lalanne correctly states the general rule of the statute of frauds that a transfer of any interest in real property must be in writing.  (Civ. Code, §§ 1091, 1624.)  But, as the trial court noted, the statute of frauds is not absolute.  For example, under the doctrine of part performance, the oral agreement for the transfer of an interest in real property is enforced when the buyer takes possession of the property and, in reliance on and pursuant to the terms of the oral agreement, makes valuable and substantial improvements to the property such that application of the statute of frauds would result in unjust or unconscionable loss.  (*Sutton v. Warner* (1993) 12 Cal.App.4th 415, 422.)  A similar, broader exception is provided under the equitable estoppel doctrine that applies when an unconscionable injury would result from denying enforcement of a contract after one party has been induced to make a serious change of position in reliance on the contract.  (*Byrne v. Laura* (1997) 52 Cal.App.4th 1054, 1068, 1072.)  Unlike the doctrine of part performance, the equitable estoppel doctrine does not require the party's change of

13

position to specifically refer to the agreement to be enforced. (*Id.* at pp. 1071-1072 [also noting this requirement has not been consistently applied in part performance cases].) Whether a party is precluded from using the statute of frauds defense is generally a question of fact. (*Chavez v. Indymac Mortgage Services* (2013) 219 Cal.App.4th 1052, 1058.)

Here, Lalanne contends the record does not show a bargained-for promise under which King provided renovations. We disagree. As discussed, King testified that he and Lalanne agreed King would own half of the property and King would complete a kitchen remodel in lieu of contributing to the down payment. The trial court could reasonably have concluded that King seriously changed his position in reliance on Lalanne's agreement. (See, e.g., *Baggesi v. Baggesi* (1950) 100 Cal.App.2d 828, 835.) He made substantial improvements to the property without compensation, and Lalanne does not contend that those improvements could be adequately compensated with money (see *Maddox v. Rainoldi* (1958) 163 Cal.App.2d 384, 389) or that King's injury did not rise to the requisite level (see *Andreotti v. Andreotti* (1964) 224 Cal.App.2d 533, 540). We conclude King's showing was sufficient, at a minimum, under the doctrine of equitable estoppel and reject Lalanne's reliance on the statute of frauds.

DISPOSITION

The interlocutory judgment is affirmed.  King shall recover costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)

/s/
MESIWALA, J.

We concur:

/s/
RENNER, Acting P. J.

/s/
BOULWARE EURIE, J.

15