PARKER, EX'RIX, V. CHANCE AND WIFE, ADM'RS.

According to the Mexican law, the community included not only property purchased with the funds of the community, but also purchases by the husband singly, or by the wife, with the express or tacit consent of the husband, whether the purchase money was the common property of both, or the separate property of either, except where with the proceeds of the sale of an article of property belonging to one of the partners another article is purchased, or where an article belonging to one of the partners is exchanged for another.

Headright certificates, issuing under the Constitution of the Republic and the law of 1837, to heads of families, formed a part of the community property.

The presumption of law is that property, conveyed to the wife, (by onerous title,) belongs to the community ; and the direction of a husband, to make out the deed in the name of the wife, will not, of itself, rebut this legal presumption.

Where the husband intends to relinquish his right in the community property, and to transfer it to his wife, his act must be explicit and such as to leave no doubt of his intentions ; a mere transfer of the property to a stranger, with directions to reconvey to the wife, will not accomplish the object, and show that a donation was intended ; and especially where the stranger is bound, under penalty, to make the title.

It is not necessary, in this case, to express any opinion as to the validity of donations of community property, nor as to the extent to which they may be made, from one partner in matrimony to another.

Appeal from Walker. The appellant, (who was plaintiff in the Court below,) alleges that she is a creditor of the estate of Edward Farris, dec'd, in the sum of two hundred and eighty dollars and interest, allowed by the administrator and approved by the Chief Justice. She further states, that on the 5th February, 1838, during the coverture of the said Farris and his wife Lucy, there was issued to the said Farris a certificate for a league and labor of land, and that in the said month and year the said Farris, in consideration that Francis Slauter would locate and clear out said league of land, and then convey to Lucy Farris one-half thereof, did, for value received, convey to said Slauter said headright certificate, and the said Slauter, in pursuance of said agreement, executed his bond for title to one-half of the said land ; that on the 16th Febru-

ary, 1846, there was issued to said Slauter, as assignee of the said Farris, a patent for said league. The petitioner further averred that Slauter having departed this life, his executor, G. W. Hill, in pursuance of said title bond, given by his testator, did, on the 2nd September, 1848, convey to the said Lucy Farris the north east half of the said league of land, by deed duly recorded, and that on the 31st of January, 1848, the said Farris, by deed, conveyed to B. F. Wright, from the west side of his headright league, one thousand acres, the beginning corners of which and the plan of survey for quantity are specified. The petitioner further alleges, that said Farris died, leaving the balance of said league, viz: twelve hundred and fourteen acres unsold and as assets for the payment of his debts; that the said Lucy Farris has lately intermarried with Isaac S. Chance, and has fraudulently withheld the same from the inventory of the estate, expecting to appropriate the same to her own use; that the Court, by reference to an exhibit of the assets, could see that the estate would scarcely pay twelve cents on the dollar, but with this land included, the estate would be perfectly solvent. The petition prayed that the said Lucy should show cause why a better inventory including said land should not be filed, &c. The defendants demurred to the petition, and for special cause of exception stated that the plaintiff's petition and the facts therein contained, sustain the correctness of the inventory as rendered, and that to have returned the land as a part of the estate would have been to inventory her own property. As the cause was disposed of on demurrer, the other pleadings need not be noticed. The County Court overruled the demurrer, decreeing that the land was, at the death of Edward Farris, community property, and ordered the same to be placed on the inventory of his estate. From this decree there was an appeal to the District Court; and in that Court the demurrer to the petition was sustained, and the petition dismissed.

The cause has been brought up to this Court by appeal, and four grounds of error have been assigned, the whole of them,

so far as they are specified, being, in substance, that the decree, sustaining the demurrer and dismissing the petition, is erroneous.

*Yoakum & Branch*, for appellant.   Slauter's bond to Lucy Farris was for a valuable consideration, and the land went to the community.  (Davidson v. Stewart, 10 La. R. 148 ; 2 Kent, part 4, Sec. 28, p. 186, Inst. of Just. 2, 7, 3.)   The headright was community, as this Court has often decided.  (Yates v. Houston, 3 Tex. R. 433.)   Can the husband give it to his wife ?   We think the Civil Law says not.   Section 99 Schmidt's Civil Law, Art. 40, p. 11 ;  Art. 985, p. 209 ;  Art. 995, p. 210 ;  Art. 1194 to 1210 inclusive,  page 255, *et seq.;* donations *inter vivos* and donations between married persons. It was to prevent just such frauds in anticipation, that these provisions were made, in regard to donations.

*W. A. Leigh*, for appellees.   The question, presented by the pleadings in this cause, is, Can a husband make a donation to his wife *post nuptias*, under the Civil Law ?   He can. (See Justinian Inst. 2, 7, 3, and Kent's Com. 2 Vol. p. 187.) This gift was made, as appears from the petition, in the year 1838; and hence the Civil Law is applicable.   This gift was made at a time when Edward Farris had no creditors.   There is no fraud  alleged by the petitioner, except that she fraudulently withheld the land from inventory.   If it were her's there could be no fraud  in that omission.   No one could suppose that E. Farris owned this land, because he had parted with it. He reserved no interest in it, and hence any credit which he may have afterwards obtained, could not have been had upon the expectation of receiving payment out of the proceeds of this land.   There is no fraud in the transaction.

HEMPHILL, CH. J.   The ground upon which the exception was sustained does not appear from the record.   From the

special cause of exception, that the land was the individual property of the defendant Lucy, and from the argument of counsel, it is to be inferred that in the opinion of the Court, the land was the separate property of the said defendant, and was therefore not to be classed among the effects of the deceased. The question then for decision is, whether the land belonged to the community existing between the deceased Farris and his wife, or to the wife exclusively in her separate right.

To determine this it will be necessary to ascertain in what the community consists, and whether property conveyed to the wife forms presumptively a portion of it.

In the case of Yates v. Houston, 3 Tex. R. 433, the articles composing the community were specified; and among other things it was said, in effect, that property acquired in the name of both partners becomes common, whether the accession be by gift or purchase, and when received in the name of one, by onerous title, the property is also common; but if by lucrative title, it becomes the separate right of the beneficiary. That such are the established rules of Spanish jurisprudence may be seen by referring to the authorities cited in Scott and Solomon v. Maynard and wife, Dallam 550. (*Vide* La. R. 520.) In that case reference was made to Febrero Addicionado. In the Mexican Edition of that author, the doctrine is stated in Sec. 6, Vol. 1, p. 219. It is there said that the common gains are not only those which both purchase during marriage, with the funds of the community, but also those which the husband purchases by himself singly, or his wife with his licence express or tacit—and whether the purchase money be the common funds or the separate property of one of them, since in all these modes the property becomes common, for the reason that the time of the acqustion is to be regarded, and not the person in whose name the purchase is made.

In the succeeding Section, some limitations are placed on this rule; as, for instance, where with the proceeds of the sale of an article of property belonging to one of the partners,

another article is purchased, and this is so expressed in the instrument of conveyance, or is proven by witnesses or other legal means or the other partner admits it; (although such mere admission is but feeble proof, since it will be regarded as a donation between the two, and this is confirmed only by death and for so much as by law is permitted ;) in such case the article purchased will remain the individual property of the partner whose funds were employed in making the purchase; and also where one article of property is exchanged for another, the articles procured will be substituted in the place of the one exchanged, &c., &c.

It appears, then, that under the law of Spain, the fact of the conveyance being in the name of the wife is not conclusive or *prima facie* presumptive proof that the property belongs to her exclusively. It would however doubtless have some weight, if there were other circumstances conducing to prove that the property belonged individually to the wife.

The mere fact that the conveyance was made by Slauter to Mrs. Farris, does not make the land her separate property. Is there anything in the circumstances under which this conveyance was made, which would confer on her a separate right. To arrive at a correct conclusion on this point, we must ascertain whether the property in the certificate or the land surveyed under it, belonged to the community or the husband individually. If it belonged to the husband in his own right, then an intention to make a gift to his wife may be very properly inferred from his acts ; if, however, it belonged to the community, it will be seen that no presumption of donation can arise from the facts as stated in the petition.

In the case of Burris v. Wideman, 6 Tex. R. 232, we have decided in effect, that headright certificates, issuing under the Constitution of the Republic and the law of 1837, form a portion of the community property ; and such is the legitimate and necessary inference from the principles decided in Yates v. Houston, 3 Tex. R. 433.

The certificate, then, placed in the hands of Slauter, be-

longed to the community; for, although it is not expressly averred that the certificate was issued to Edward Farris as the head of the matrimonial union of which his wife Lucy formed the other partner, yet such is the legitimate inference from the facts as averred.

The certificate being a portion of the community, what is the effect of the assignment to Slauter, and the retransfer of the one-half to Mrs. Farris? Can it have any other consequence than would arise from a retransfer to the husband, viz: to restore it to the community from which it had been taken? The transaction is, in substance, an agreement by the husband to convey to the locator one-half of a community league of land for clearing out the other half. This he might have done by taking the patent in his own name, and assigning one-half to the locator. But he pursued another mode. He assigns the whole of the certificate and land, with an obligation to reconvey the one-half, not to himself but to his wife. Could this change from one partner to the other, alter the rights of the community or of the individual partners? When the land was assigned it belonged to the community; in the hands of the locator it remained common property; and it is of no consequence, that he conveyed it to the wife, when under the law it is immaterial whether the conveyance be to the wife or husband. For whether it be in the name of either or of both, the property conveyed belongs to the community.

The presumption of law is that property, conveyed to the wife, belongs to the community; and the direction of a husband, to make out the deed in the name of the wife, will not, of itself, rebut this legal presumption. In this case Slauter, the locator, might have conveyed to either husband or wife. His conveyance to either has the like effect, viz: to vest the property in the community.

Where the husband intends to relinquish his right in the community property, and to transfer it to his wife, his act must be explicit and such as to leave no doubt of his intentions. A mere transfer of the property to a stranger, with directions

to reconvey to the wife, will not accomplish the object, and show that a donation was intended; and especially when the stranger is bound under penalty, to make title. For, in such case, the conveyance, though made in the name of the wife, cannot deprive the community of its rights.

It is not necessary, in this case, to express any opinion as to the validity or extent to which donations of community property may be made from one partner in matrimony to the other.

Had this transaction, embracing the assignment of the league and the retransfer of the one-half to the wife, taken place under the Common Law, where the estate of community and the doctrines in relation to it are unknown, the conveyance to the wife would have been presumptive evidence of a gift and advancement by the husband. (2 Vern. 67; 8 Ves. 199; Bright, Hus. and Wife, Vol. 1, p. 32.) Where a husband purchases stock in the name of himself and wife, it is *prima facie* a gift to her in the event of her surviving; (Bright, Hus. and Wife, Vol. 1, p. 32;) and a transfer, by the husband, of stock already purchased, in (into) their joint names, would be presumed a gift to the wife. (Ib.) These are doctrines of the Common Law, and cannot be recognized under a system in which a conveyance to the wife is presumptive evidence, not of her separate right but of that of the community.

The doctrines in relation to donations between husband and wife need not be discussed; as we are of opinion that the facts do not afford any evidence of donation. Judgment reversed and cause remanded.

Reversed and remanded