# MEYER v. KINZER AND WIFE.

Under our statute, all property acquired after marriage, by either husband or wife, except such as is acquired by gift, bequest, devise or descent, is common property.

The presumption, therefore, which attends the possession of property by either spouse, during the existence of the community, can only be overcome by clear and certain proof that it was owned by the claimant before marriage, or acquired afterwards in one of the particular ways specified in the statute, or that it is property taken in exchange for, or in the investment, or as the price of the property so originally owned or acquired. The burthen of such proof is with the claimant of the separate estate.

Where the purchase of property was made with the separate funds of either, that fact must be affirmatively established by clear and decisive proof. In the absence of such proof, the presumption is absolute and conclusive, and it makes no difference whether the conveyance is taken in the name of one or the other, or in the names of both.

The fact of purchase excludes the supposition of acquisition by gift, bequest, devise or descent.

APPEAL from the Twelfth District, County of San Francisco.

This was an action brought by the plaintiff against the defendants, Kinzer and wife, to extinguish a claim of title by the defendants to certain real estate in the City of San Francisco.

Kinzer, the husband, in his answer disclaimed all pretensions to title in himself.   Rebecca, the wife, sets up title by a mortgage upon the premises, and asked that the same may be foreclosed for the benefit of her separate estate.

The facts are as follows :

On the sixth of December, 1851, the defendant, George W. Kinzer, who was then, and still is, the husband of the defendant Rebecca, purchased certain real estate in the city of San Francisco, and took the conveyance in his own name.   On the first of October, 1853, Kinzer and wife sold the premises to James H. Gager, both joining in the deed, and on the same day, Gager executed and delivered to Kinzer and wife, a note and mortgage on the premises, to secure $14,000 of the purchase money.   On the eighth day of April, 1854, George W. Kinzer, for a valuable consideration, assigned and transferred the note and mortgage to Adolphus H. Lemmen—the wife did not join in this assignment.   On the twenty-fifth of September, 1855, Gager, the mortgagor, paid to Lemmen the amount of the mortgage, and took a discharge.   On the sixteenth of July, 1856, Gager sold and conveyed the property to plaintiff.   The defendant Rebecca sets up a claim to one-half of the mortgage debt, as her separate property.

The cause was tried in the Court below without a jury.   Plaintiff had judgment, and the defendant Rebecca appealed to this Court.

*J. B. Hart* for Appellant.

The position taken by the appellant is, that the contract and agreement between her and her husband, by which one-half of the mortgage was placed in her name and so recorded, gave to her the title to a moiety of the mortgage, and placed it beyond the control and disposition of her husband.

Before the sale and conveyance to Gager, the property was common property, one-half of which was in equity hers, the other her hus-

band's,—while in his name was subject to his disposition, and liable for the payment of his debts, but after the sale to Gager, and execution and record of the mortgage, nothing beyond a moiety of the mortgage was his, and under his control—the other was her property, and none but a creditor before the sale and mortgage could reach it.

The second section of the Act regulating the rights of husband and wife, (Cod. Statutes, p. 812) does not prohibit the wife from accepting a gift from the husband, from common or his separate property.

It is clear to my mind, from the seventh section of the Act just alluded to, that the Legislature did not intend to adopt the civil Spanish or French law in regard to gifts or donations between husband and wife, for all those codes prohibit all gifts or donations between them; and upon a fair construction of the Act under consideration, it ought not, it seems to me, to be doubted but a gift from husband to wife, of either common or separate property, was intended by the Act to be allowed, otherwise the Act itself would be an unjust, unfair, and an improper law.

The wife, by the Act, and in all subsequent legislation on the subject, obtained and now has a separate existence and standing from that of her husband in regard to property; the common law no longer governs their right to property, or controls their actions in regard to it, and the only check upon her disposition by her of her property, is that the husband must join in the instrument with her.

The provisions of the third section of the Act, requiring the separate estate of the wife to be inventoried and acknowledged by the wife, and recorded by her, has reference to her separate personal and real estate, in the name and under the control of her husband, and was done to prevent him from having credit upon her property.

But when the title of property is placed in the name of the wife, by and with the consent and direction of the husband, as between her husband and the world, it is hers.   Standing in her name, it is notice to all, creditors and buyers, that that property is not subject to sale by him, or to the payment of debts thereafter contracted by him.

*Johnson & Rose* for Respondent.

The plaintiff contends, that the said mortgage, like the property, a

16

part of the price of which it was given to secure, was the common property of the Kinzers, husband and wife, and as such, subject to the control and disposition of the husband alone. There would seem to be no difficulty in this, under the statute. Wood's Digest, 487, sec. 2 ; see also sec. 9, same Act.

A very similar case was decided in Texas, under the nearly identical provisions of the law in that State. Parker *v.* Chance, 11 Texas Rep. 513.

For the law determining marital rights in Texas, see Hartley's Digest, pp. 734–8 ; see also 2 Bright, Husband and Wife, p. 678 ; Laws passed by the second Legislature of Texas, vol. 2, part 1, pp. 77–9.

Such, also, has been the interpretation of our own law by the Supreme Court, in the case of Joyce *v.* Joyce, 5 Cal. Rep. 161.

Louisiana, Texas and California, have taken this law of a community of property between husband and wife, from the Spanish law, which previously governed the territory out of which those States were formed. In the cases of Parker *v.* Chance, and Joyce *v.* Joyce, the two younger States have conformed to the law as interpreted in Louisiana, and in the Spanish commentators. Smalley *v.* Lawrence, 9 Rob. La. Rep. 214 ; Febrero Mejicano, Lib. 1, Tit. 2, cap. 10, secs. 1, 6.

In the case of Smalley *v.* Lawrence, the Supreme Court of Louisiana holds this language : " The land was purchased during the existence of the community, and although the receipts or certificates are in the name of the wife, still the property as much belongs to the community as if it stood in the name of the husband, unless she can prove that the purchases were made with her own money, or the property given in payment of a debt owing to her in her own right." 1 Rob. 367 ; 17 La. 300 ; Houston *v.* Carl, 8 Texas Rep. 240 ; Scott & Soloman *v.* Maynard *et ux.*, Dallam, 548 ; McIntyre *v.* Chappell, 4 Texas Rep. 187 ; Love and Wife *v.* Robertson, 7 Texas Rep. 6.

It is contended on behalf of the appellant, that the case is governed by the common law, and that the facts recited in the stipulation raise the presumption of a gift by the husband to the wife. So it was contended in the cases cited from the 11 Texas and 5 Cal. Reports. In

the case of Parker v. Chance, the following observations fell from the Court respecting this part of the case :

" Had this transaction, embracing the assignment and the re-transfer of the one-half to the wife, taken place under the common law, where the estate of community and the doctrines belonging to it are unknown, the conveyance to the wife would have been presumptive evidence of a gift and advancement by the husband." 2 Vern. 67 ; 8 Vesey, 199 ; Bright, Husband and Wife, vol. 1, p. 32.

FIELD, J., delivered the opinion of the Court—TERRY, C. J., and BALDWIN, J., concurring.

The statute defining the rights of husband and wife, provides in its first section that " all property, both real and personal, of the wife, owned by her before marriage, and that acquired afterwards by gift, bequest, devise or descent, shall be her separate property ; and all property, both real and personal, owned by the husband before marriage, and that acquired by him afterwards, by gift, bequest, devise or descent, shall be his separate property ;" and, in the second section, that " all property acquired after marriage, by either husband or wife, except such as may be acquired by gift, bequest, devise or descent, shall be common property ;" and, by the ninth section, the husband is invested with the entire management and control of the common property, with the like absolute power of disposition as of his own separate estate.

These provisions of the statute are borrowed from the Spanish law, and there is hardly any analogy between them and the doctrines of the common law in respect to the rights of property consequent upon marriage. The statute proceeds upon the theory that the marriage, in respect to property acquired during its existence, is a community of which each spouse is a member, equally contributing by his or her industry to its prosperity, and possessing an equal right to succeed to the property after dissolution, in case of surviving the other. To the community all acquisitions by either, whether made jointly or separately, belong. No form of transfer or mere intent of parties can overcome this positive rule of law. All property is common property, except that owned previous to marriage or subsequently acquired in a

particular way.   The presumption, therefore, attending the possession of property by either, is that it belongs to the community ; exceptions to the rule must be proved.

The purchase of the premises in question was made by Kinzer in 1851, after his marriage with Rebecca, and the presumption follows, as we have observed, that the property belonged to the community. If the purchase was made with the separate funds of either, that fact should have been affirmatively established by clear and decisive proof. In the absence of such proof the presumption was absolute and con-clusive, and it made no difference whether the conveyance was taken in the name of one or the other, or in the names of both.   This results, as we have said, from the language of the statute—"All property acquired after marriage by *either*, etc., shall be common property." The fact of purchase excludes the supposition of acquisition by gift, bequest, devise or descent.

The Spanish law, so far as the question involved in the present case is concerned, has been adopted in the States of Texas and Louisiana, and in these States the same presumption is indulged that the prop-erty belongs to the community from the fact of purchase, as will be perceived by an examination of the adjudged cases in their Courts. Thus in Love v. Robertson, (7 Texas, 11) the Supreme Court of Texas held this language : " The presumption that property purchased during the marriage was community property, would certainly be very cogent, and would require to be repelled by clear and conclusive proof."   In Houston v. Carl, (8 Texas, 240) the same Court said : " It is the settled doctrine and law, that property purchased during the marriage, whether the conveyance be made to the husband or wife separately, or to them jointly, is presumed to belong to the commu-nity.   This presumption may be rebutted by clear and satisfactory proof that the purchase was made with the separate funds of either husband or wife, in which case it remains the separate property of the party whose money was employed in the acquisition."   And again, in Chapman v. Alden, (15 Texas, 278) the Court said: " The presump-tion that property purchased during the marriage is community prop-erty is very cogent, and can only be repelled by clear and conclusive proof that it was with the individual money or property of one of the

parties." Where the property has not been preserved in specie or in kind, but, as in this case, has undergone mutations and changes, it is indispensable to ascertain its separate character that it be clearly and indisputably traced and identified. See also Lott v. Leach, 5 Texas, 394 ; Hemmingway v. Mathews, 10 Texas, 207 ; Parker v. Chance, 11 Texas, 513 ; Wells and Wife v. Cockram, 13 Texas, 127 ; Claiborne v. Tanner, 13 Texas, 69.

To the same effect are the decisions of the Supreme Court of Louisiana. In Smalley v. Lawrence, (9 Rob. 211) the plaintiff claimed to be the owner of several tracts of land, by purchase from the United States, against a cession by her husband of his property to his creditors. The parties were married in 1839, and the land was bid off at a land sale in 1841, and paid for by the husband, who took the receipts in the name of the plaintiff, and the Court said : " The land was purchased during the existence of the community, and although the receipts or certificates are in the name of the wife, still the property as much belongs to the community as if it stood in the name of the husband, unless she can prove that the purchases were made with her own money, or the property given in payment of a debt owing to her in her own right. All property acquired by either spouse during the existence of the community, the law presumes to belong to it, and is liable for the community debts. If the wife sets up a separate claim, she must make legal proof of it. *The title being in her name does not raise even a presumption in her favor.*" See also Ford v. Ford, 1 La. 201 ; Davidson v. Stuart, 10 La. 146 ; Dominguez v. Lee, 17 La. 295; Comeau v. Fontenon, 19 La. 406 ; Fisher v. Gordy, 2 La. Ann. 762 ; Provost v. Delahoussaye, 5 La. Ann. 610; Brendergast v. Cassidy, 8 Ann. 96; Webb v. Peet, 7 Ann. 92 ; Andrew v. Bradley, 10 Ann. 606 ; Forbes v. Forbes, 11 Ann. 326.

This invariable presumption which attends the possession of property by either spouse during the existence of the community, can only be overcome by clear and certain proof that it was owned by the claimant before marriage, or acquired afterwards in one of the particular ways specified in the statute, or that it is property taken in exchange for, or in the investment, or as the price of the property so originally owned or acquired. The burden of proof must rest with the

claimant of the separate estate. Any other rule would lead to infinite embarrassment, confusion and fraud. In vain would creditors or purchasers attempt to show that the particular property seized or bought was *not* owned by the claimant before marriage, and was *not* acquired by gift, bequest, devise or descent, or was *not* such property under a new form consequent upon some exchange, sale or investment. In vain would they essay to trace through its various changes the disposition of any separate estate of the wife, so as to exclude any blending of it with the particular property which might be the subject of consideration.

By a statute of Pennsylvania, passed in 1848, the property owned by the wife previous to marriage, and that accruing to her during coverture, by will, descent, deed or conveyance, or otherwise, are secured to her as a separate estate; and in Gamber v. Gamber, (6 Harris, 363) the Supreme Court of the State said: "In the case of a purchase by the wife after marriage, the burden is upon her to prove distinctly that she paid for it with funds which were not furnished by the husband. Unless the rigid proof of her title is always required, no one can calculate the amount of injustice which the Act of 1848 will produce;" and in Kearney v. Good, (9 Harris, 355) the same Court held this language: "If the burden of proving that the money was furnished by the husband is thrown upon the creditors, their hope of justice must always be a forlorn one. Thus administered, the Act of 1848 would be the worst one ever passed, and the most poisonous to the morals of the people. It would hold out constant temptations to families in embarrassed circumstances to commit wrongs of the worst kind, and to uphold them by imposture and falsehood.

" But there is nothing in the Act of 1848 which makes such consequences at all necessary. To bring the property of a married woman under its protection, it is made necessary by the letter, as well as the spirit of the statute, to prove that she *owns* it. She must identify it as property which was hers before marriage, or show how she came by it afterwards. Evidence that she purchased it amounts to nothing, unless it be accompanied by clear and full proof that she paid for it with her own separate funds. In the absence of such proof, the presumption is a violent one that her husband furnished the means of payment."

It follows, from the views we have taken and the authorities cited, that no presumption arises, as contended by appellant, of a gift or advancement to the wife, from the fact that the note and mortgage were taken in the name of both. The position of the appellant rests upon the authorities of the common law. By them a conveyance taken in the name of the purchaser, or the joint names of husband and wife, upon a purchase made by the husband alone, would be deemed *prima facie* a gift or advancement to her. (Kingdom *v.* Bridges, 2 Vern. 67 ; Glaister *v.* Hewer, 8 Vesey, 99 ; Christ's Hospital *v.* Budgin, 2 Vern. 683.) But even by them, the gift, if the property were personal, would only be effectual in case of her surviving him, and he had not, in his lifetime, disposed of it. Cotes *v.* Stevens, 1 Y. & C. Eq. 66 ; George *v.* Bank of England, 7 Price, 646 ; Rider *v.* Kidder, 10 Vesey, 360 ; Lucas *v.* Lucas, 1 Atk. 270 ; Drummer *v.* Pitcher, 5 Lun. 35 ; Low *v.* Carter, 1 Beav. 426.

The common law authorities are entirely inapplicable under our system. The statute prescribes the effect of the acquisition of property by either spouse, and its operation cannot be defeated or evaded by the form of the conveyance, or the intention of the husband, in taking it in the name of his wife. In every form the community character of the property continues. See Parker *v.* Chance, 11 Texas, 515.

As the case at bar stands, it is clear that the note and mortgage were subject to the disposition of the husband as fully and absolutely as if made to him individually. The note was given for part of the purchase money of the land, and the mortgage was executed as security for the note. This change in the form of the common property could not affect the control of the husband over it. The signature of the wife would have added nothing to the validity of the transfer.

Judgment affirmed.