Filed 5/15/14

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| In re the Marriage of FRANKIE and RANDY VALLI. | ) ) ) ) | |
| FRANKIE VALLI, | ) ) | |
| Respondent, | ) ) ) | S193990 |
| v. | ) ) | Ct.App. 2/5 B222535 |
| RANDY VALLI, | ) ) ) | Los Angeles County |
| Appellant. | ) ) | Super. Ct. No. BD414038 |

During a marriage the husband used community property funds to purchase an insurance policy on his life, naming his wife as the policy's only owner and beneficiary. Upon dissolution of the marriage, is the life insurance policy community property or the wife's separate property? We conclude that, unless the statutory transmutation requirements have been met, the life insurance policy is community property. Because the Court of Appeal reached a different conclusion, we reverse that court's judgment.

## I

After a 20-year marriage, Frankie Valli (husband) and Randy Valli (wife) separated in September 2004. Their three children were minors at the time of separation but have since become adults. Before the separation, in March 2003, husband used community property funds from a joint bank account to buy a $3.75

1

million insurance policy on his life, naming wife as the sole owner and beneficiary. Until the parties separated, the policy premiums were likewise paid with community property funds from a joint bank account.

At the marital dissolution proceeding, wife testified that she and husband, while he was in the hospital for "heart problems," had talked about buying a life insurance policy. Wife said that husband and their business manager, Barry Siegel, told her that they would make her the policy's owner. Husband testified that he "put everything in [wife's] name, figuring she would take care and give to the kids what they might have coming" and that he had no plans to separate from wife when he bought the policy.

The trial court ruled that the insurance policy was community property because it was acquired during marriage with community funds. The court awarded the policy to husband and ordered him to buy out wife's interest in the policy by paying her $182,500, representing one-half of the policy's cash value at the time of trial. The Court of Appeal reversed, holding that the insurance policy was wife's separate property.

**II**

In a marital dissolution proceeding, a court's characterization of the parties' property — as community property or separate property — determines the division of the property between the spouses. (*In re Marriage of Benson* (2005) 36 Cal.4th 1096, 1102; *In re Marriage of Haines* (1995) 33 Cal.App.4th 277, 291.) Property that a spouse acquired before the marriage is that spouse's separate property. (Fam. Code, § 770, subd. (a)(1).) Property that a spouse acquired during the marriage is community property (*id.*, § 760) unless it is (1) traceable to a separate property source (*In re Marriage of Lucas* (1980) 27 Cal.3d 808, 815; *In re Marriage of Mix* (1975) 14 Cal.3d 604, 610, 612), (2) acquired by gift or bequest (Fam. Code, § 770, subd. (a)(2)), or (3) earned or accumulated while the

2

spouses are living separate and apart (*id.*, § 771, subd. (a)).  A spouse's claim that property acquired during a marriage is separate property must be proven by a preponderance of the evidence.  (*In re Marriage of Ettefagh* (2007) 150 Cal.App.4th 1578, 1591; see *Estate of Murphy* (1976) 15 Cal.3d 907, 917 [a spouse asserting that property acquired by purchase during a marriage is separate property must prove that the property is not community].)

Here, as mentioned earlier, husband during the marriage took out a $3.75 million insurance policy on his life, designating wife as the policy's sole owner and beneficiary.  The parties do not dispute that the policy was purchased with community property funds from a joint bank account.  What they do dispute is the policy's characterization.  Husband argues that the policy is community property because it was purchased during the marriage with community funds.  (See *Tyre v. Aetna Life Ins. Co.* (1960) 54 Cal.2d 399, 402 ["A policy of insurance on the husband's life is community property when the premiums have been paid with community funds."]; *Grimm v. Grimm* (1945) 26 Cal.2d 173, 175 [same].)  Wife argues that the policy is her separate property because husband arranged for the policy to be put solely in her name, thereby changing the policy's character from community property to separate property.

Married persons may, through a transfer or an agreement, transmute — that is, change — the character of property from community to separate or from separate to community.  (Fam. Code, § 850.)  A transmutation of property, however, "is not valid unless made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected."  (*Id.*, § 852, subd. (a).)  To satisfy the requirement of an "express declaration," a writing signed by the adversely affected spouse must expressly state that the character or ownership of the property at issue is being changed.  (*Estate of MacDonald* (1990) 51 Cal.3d 262, 272.)  The "express

3

declaration" requirement "does not apply to a gift between the spouses of clothing, wearing apparel, jewelry, or other tangible articles of a personal nature that is used solely or principally by the spouse to whom the gift is made and *that is not substantial in value taking into account the circumstances of the marriage*." (Fam. Code, § 852, subd. (c), italics added.)

Here, husband contends that because the express written declaration requirement was not satisfied, his act of placing the life insurance policy in wife's name did not transmute the policy, which was purchased during the marriage with community funds, into a separate property asset of wife. Wife argues that the transmutation requirements apply only to transactions between spouses, and not to one spouse's acquisition of property from a third party. Here, she argues, the only transaction was between husband and the insurance company issuing the policy. Because there was *no interspousal transaction*, in her view the transmutation requirements do not apply.

The Legislature adopted the statutory transmutation requirements in 1984 upon a recommendation of the California Law Revision Commission. (*Estate of MacDonald*, *supra*, 51 Cal.3d at p. 268.) In its report to the Legislature, the commission observed that under then existing law it was " 'quite easy for spouses to transmute both real and personal property' " because a transmutation could be proved by evidence of an oral agreement between the spouses or by " 'implications from the conduct of the spouses.' " (*Id.* at p. 269.) This " 'rule of easy transmutation . . . generated extensive litigation in dissolution proceedings' " where it encouraged spouses " 'to transform a passing comment into an "agreement" or even to commit perjury by manufacturing an oral or implied transmutation.' " (*Ibid.*) As this court has concluded, therefore, in adopting the statutory transmutation requirements the Legislature intended "to remedy problems which arose when courts found transmutations on the basis of evidence

4

the Legislature considered unreliable." (*Ibid.*; accord, *In re Marriage of Benson*, *supra*, 36 Cal.4th at p. 1106 [the transmutation statute "blocks efforts to transmute marital property based on evidence — oral, behavioral, or documentary — that is easily manipulated and unreliable"].)

The distinction that wife here urges us to draw between interspousal property transactions (which are subject to the transmutation statutes) and property acquisitions from third parties (which would not be subject to those statutes even when it has the claimed effect of changing community property funds to a separate property asset or vice versa) bears no relation to these legislative concerns, and it produces arbitrary and irrational results that the Legislature could not have intended. A few hypothetical examples illustrate this point.

Suppose a husband, shopping at a jewelry store, uses community funds to buy a particularly expensive diamond necklace that is "substantial in value taking into account the circumstances of the marriage" (Fam. Code, § 852, subd. (c)), intending to give it to his wife a few days later as a birthday present. Because of the particular necklace's value in comparison to the particular couple's financial situation, the gift exception does not apply. Under the analysis urged here by wife, the transmutation statutes would not apply to the necklace's *purchase* because it was a third party transaction with the jewelry store. But because the husband used community funds to buy the necklace and did not immediately transfer title or possession to the wife, the purchase itself did not cause any transmutation, and the necklace would be community property at least until the wife's birthday. On that day, the husband's act of giving the necklace to the wife, together with the wife's act of accepting the husband's gift, would be an interspousal transaction to which the transmutation requirements would apply even under the analysis urged here by wife. Absent an express written declaration,

5

therefore, the necklace would remain community property even after the wife received it as a birthday gift from the husband.

Next, suppose that instead of buying the necklace for his wife before her birthday, the husband, on his wife's birthday, promises to buy a diamond necklace of her choice. They go to a jewelry store, the wife selects a particular necklace that is "substantial in value taking into account the circumstances of the marriage" (Fam. Code, § 852, subd. (c)), the husband pays for it with community funds, and they leave the store with the wife wearing the new jewelry. In this scenario, there would appear to be a single transaction, the jewelry store purchase. Under the analysis urged here by wife, the transmutation statutes would not apply to that single transaction because it was a purchase from a third party, and thus no "express declaration" would be required to transmute the community property funds to the wife's separate property asset.

For purposes of the transmutation statutes, it is difficult to conceive any justification for treating these two hypothetical scenarios differently. Under either scenario, the husband could present evidence, in a later dissolution proceeding, that he and the wife had discussed the advantages of diamonds as an investment, that they had orally agreed the necklace would eventually be passed on to their daughter, and that it was therefore understood between them that although this very expensive necklace would be the wife's to wear on special occasions, it would remain a community asset. To rebut the husband's evidence, the wife could deny having any conversation with the husband about investing in diamonds or purchasing jewelry as a family legacy, and she could present evidence of a contrary understanding that the necklace was to be hers alone. If the transmutation statutes did not apply, and in the absence of a writing expressly memorializing the parties' understanding and intent, the trial court in the dissolution proceeding would be obliged to base its decision regarding the necklace's character as

6

community or separate property on a difficult assessment of the spouses' credibility as witnesses. (See, e.g., *In re Marriage of Steinberger* (2001) 91 Cal.App.4th 1449, 1456.) Putting the trial court in such a position is what the transmutation statutes were enacted to prevent.

One could argue, perhaps, that the second hypothetical scenario, like the first, can and should be viewed as two transactions — a purchase from a third party *and* an interspousal giving of a gift — that are legally distinguishable even though they occurred simultaneously. Adopting that approach, one would conclude that the interspousal gift transaction was subject to the transmutation statutes in the second scenario just as in the first. But if the second jewelry gift scenario can be parsed into two simultaneous but legally separable transactions, then so here could husband's purchase of the life insurance policy, with title taken in wife's name. If, as wife here claims, the effect of the policy purchase with money from a joint bank account was to convert community property funds into her separate property asset, then the purchase necessarily involved a gift from husband to wife because wife has never maintained that she gave husband anything in exchange for his community interest in the purchase money. If the policy was a gift by husband to wife, then the giving and receiving of that gift was an interspousal transaction to which the transmutation statutes apply. (Cf. *Burkle v. Burkle* (2006) 141 Cal.App.4th 1029, 1036, fn. 5 [the elements of a gift include " 'delivery, either actual or symbolical' " and " 'acceptance, actual or imputed' "].)

This point can be further illustrated by another hypothetical. Suppose in this case husband had initially taken title to the insurance policy jointly in his and wife's names, and then on a later date, after receiving estate planning advice and discussing the matter with wife, he had instructed the insurer to transfer the title to wife's name alone. In that situation, where wife acquired sole title to the policy

7

some time after the policy's purchase, it appears that wife would concede the transmutation statutes' applicability to any claim by her, in a marital dissolution proceeding, that the change in title changed the character of the policy from community to separate property.[1]  Therefore, under the analysis urged here by wife, whether the transmutation statutes apply to the insurance policy depends upon the entirely fortuitous circumstance of when she acquired sole title to the insurance policy, whether during the purchase or after the purchase of the policy. We are unwilling to conclude the Legislature intended application of the transmutation statutes to turn on such fortuitous distinctions.

We recognize that some court decisions have stated that a transmutation requires an interspousal transaction and that one spouse's acquisition of an asset from a third party is therefore exempt from the statutory transmutation restrictions. Those decisions are unpersuasive, however.

The notion that third party transactions cannot be transmutations may be traced to the Court of Appeal's 1995 decision in *In re Marriage of Haines*, *supra*, 33 Cal.App.4th 277.  There, the Court of Appeal said that a transmutation is "an interspousal transaction or agreement which works a change in the character of the property." (*Id.* at p. 293.)  Referring to the wife's signing of a quitclaim deed conveying the family residence to the husband during the marriage, the court concluded that this was a transmutation subject to the statutory express declaration

---

[1]      Wife here might argue that instructing the insurance company to transfer title after the policy's purchase would be a third party transaction, like the initial purchase of the policy, because it could be done without her knowledge or participation.  If we were to accept that argument, however, the result would be drawing an arbitrary distinction between assets as to which title transfers are always made through a third party, such as the insurance company here, and assets such as real property, as to which title transfers are normally made by deed or similar conveyances between the affected parties.

8

requirement.  (*Ibid.*)  The court did not consider whether any other transaction was a transmutation, and in particular it did not consider whether one spouse's purchase of property from a third party could be a transmutation.

The statement that a transmutation is "an interspousal transaction or agreement" (*In re Marriage of Haines*, *supra*, 33 Cal.App.4th at p. 293) was later repeated in the Court of Appeal decisions in *In re Marriage of Campbell* (1999) 74 Cal.App.4th 1058, 1062 and *In re Marriage of Cross* (2001) 94 Cal.App.4th 1143, 1147 (*Cross*).  But neither decision exempted a third party transaction from the transmutation requirements on the basis that it was not "interspousal."  Indeed, *Cross* said that the transmutation statutes address situations such as "where a wife buys a car for her husband with community property funds" (*Cross*, at pp. 1147-1148), a typical third party transaction.  (See also *In re Marriage of Buie & Neighbors* (2009) 179 Cal.App.4th 1170, 1173-1175 [applying transmutation statutes to a husband's purchase of a car for himself using the wife's separate funds].)  In 2005, this court likewise stated that a transmutation is an "interspousal transaction" (*In re Marriage of Benson*, *supra*, 36 Cal.4th 1096, 1100), but we did not consider whether this definition excludes spousal purchases during the marriage from third parties with community funds.

The first decision to hold that a spousal purchase from a third party during a marriage was not subject to the statutory transmutation requirements was *In re Summers* (9th Cir. 2003) 332 F.3d 1240, which was a bankruptcy proceeding rather than a marital dissolution proceeding.  There, the federal appellate court was attempting to construe and apply California law "to determine whether the requirements of California's transmutation statute . . . must be met when realty is transferred from a third party to spouses as joint tenants."  (*In re Summers*, at p. 1242.)  Relying on the statement by the California Court of Appeal in *Cross* that a transmutation is an " 'interspousal transaction or agreement' " (*Cross*, *supra*, 94

9

Cal.App.4th at p. 1147), the federal court concluded "that the transmutation requisites had no relevance to the conveyance in this case." (*In re Summers*, at p. 1245.)

The year 2008 saw the first decision by a California state appellate court exempting from the transmutation requirements a spousal purchase from a third party: *In re Marriage of Brooks & Robinson* (2008) 169 Cal.App.4th 176. In that marital dissolution proceeding, the husband and the wife disputed ownership of residential property they had purchased during the marriage, taking title solely in the wife's name. (*Id.* at pp. 179-180.) On appeal, the husband argued, among other things, that the purchase of the property in the wife's name alone was an attempted transmutation that was invalid because it did not comply with the statutory transmutation requirements. (*Id.* at p. 191.) Rejecting the husband's argument, the Court of Appeal stated that there were "no facts suggesting a transmutation, valid or otherwise" because the property "was acquired in [the wife's] name in a transaction with a third person, not through an interspousal transaction." (*Ibid.*)

As mentioned earlier, these last two decisions (*In re Summers*, *supra*, 332 F.3d 1240; *In re Marriage of Brooks & Robinson*, *supra*, 169 Cal.App.4th 176) are not persuasive insofar as they purport to exempt from the transmutation requirements purchases made by one or both spouses from a third party during the marriage. Neither decision attempts to reconcile such an exemption with the legislative purposes in enacting those requirements, which was to reduce excessive litigation, introduction of unreliable evidence, and incentives for perjury in marital dissolution proceedings involving disputes regarding the characterization of property. Nor does either decision attempt to find a basis for the purported exemption in the language of the applicable transmutation statutes. Also, these decisions are inconsistent with three Court of Appeal decisions stating or holding

10

that the transmutation requirements apply to one spouse's purchases from a third party during the marriage. (*In re Marriage of Buie & Neighbors*, *supra*, 179 Cal.App.4th at pp. 1173-1175; *Cross*, *supra*, 94 Cal.App.4th at pp. 1147-1148; *In re Marriage of Steinberger*, *supra*, 91 Cal.App.4th at pp. 1463-1466.)

Our examination of the statutory language leads us to reject the purported exemption for spousal purchases from third parties. As we have said (*ante*, p. 4), the transmutation statutes provide an express exemption for gifts of relatively inexpensive personal items. (Fam. Code, § 852, subd. (c).) Because spouses most often use community funds to purchase such gifts for each other, the statutory exemption necessarily implies that gifts not qualifying for the exemption (because they are "substantial in value" or because they are not items "of a personal nature") *are* transmutations subject to the express declaration requirement, notwithstanding that a great many, if not most, involve purchases from third parties.[2]

As mentioned, the Court of Appeal here concluded that the transmutation statutes were "not relevant to this case" because the disputed life insurance policy "was acquired from a third party and not through an interspousal transaction." After stating that conclusion, which we have determined to be erroneous, the court added: "Moreover, [wife] did not contend in the trial court, and does not contend

---

[2]    Enactment of the transmutation statutes (Fam. Code, §§ 850-853) abrogated earlier judicial decisions that were inconsistent with the statutory requirements. One such decision was *In re Marriage of Lucas*, *supra*, 27 Cal.3d 808, in which this court upheld a trial court's characterization of a motor home acquired during a marriage as entirely the wife's separate property. From the husband's failure to object when title was taken in the wife's name alone the trial court inferred that the husband had made a gift to the wife of his interest in community funds used to purchase the motor home. (*In re Marriage of Lucas*, at pp. 817-818.) That portion of the decision is no longer good law.

on appeal, that the policy is her separate property through transmutation. Instead, [wife] contends that the policy is her separate property by operation of the form of title presumption." Referring to Evidence Code section 662, which states that "[t]he owner of the legal title to property is presumed to be the owner of the full beneficial title," the Court of Appeal here asserted that "because the form of title presumption applies . . . a transmutation theory is not involved."

This reasoning by the Court of Appeal, we also conclude, is erroneous. We need not and do not decide here whether Evidence Code section 662's form of title presumption ever applies in marital dissolution proceedings. Assuming for the sake of argument that the title presumption may sometimes apply, it does not apply when it conflicts with the transmutation statutes. (See *In re Marriage of Barneson* (1999) 69 Cal.App.4th 583, 593.)

For the reasons we have given, the transmutation requirement of an express written declaration applies to wife's claim, in this marital dissolution proceeding, that the life insurance policy husband purchased during the marriage with community funds is her separate property. Wife does not contend that she presented evidence at trial sufficient to satisfy the express declaration requirement, nor does our examination of the record disclose such evidence. Husband never expressly declared in writing that he gave up his community interest in the policy bought with community funds. Accordingly, we agree with the trial court's characterization of the insurance policy as community property.

Because it concluded that the trial court had erred in characterizing the policy as community property, the Court of Appeal did not reach wife's contentions "that the trial court erred in awarding ownership solely to [husband] at the policy's cash value and that it abused its discretion in failing to maintain [wife] as a beneficiary on the policy as spousal support." The Court of Appeal will address those contentions by wife on remand.

12

**DISPOSITION**

The Court of Appeal's judgment is reversed and the matter is remanded to that court for further proceedings consistent with this opinion.


KENNARD, J.*

WE CONCUR:

CANTIL-SAKAUYE, C. J.
BAXTER, J.
WERDEGAR, J.
CHIN, J.
CORRIGAN, J.
LIU, J.

---

*        Retired Associate Justice of the Supreme Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**CONCURRING OPINION BY CHIN, J.**


I agree with the majority opinion, which I have signed. I write separately to discuss a threshold question that has been the primary focus of the briefs of the parties and amici curiae: What role, if any, does a common law rule codified in Evidence Code section 662 (section 662) have in determining, in an action between the spouses, whether property acquired during a marriage is community or separate?

Family Code section 760 provides: "Except as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property." Family Code section 802 refers to the "presumption that property acquired during marriage is community property." In combination, these statutes provide a presumption that property acquired during the marriage is community property. (*In re Marriage of Benson* (2005) 36 Cal.4th 1096, 1103.) (I will sometimes refer to this presumption as the section 760 presumption.) It appears this presumption can be overcome by a preponderance of the evidence. (*In re Marriage of Ettefagh* (2007) 150 Cal.App.4th 1578.)

Although the section 760 presumption is rebuttable, not just any evidence can overcome the presumption, but only evidence showing that another statute makes the property something other than community property. "By its own terms, the definition of community property in section 760 applies '[e]xcept as otherwise

provided by statute.'  It therefore exempts property defined as separate under other provisions.  (E.g., [Fam. Code,] §§ 770 [property acquired by gift or inheritance], 771 [earnings and accumulations while living separate and apart].)"  (*In re Marriage of Benson*, *supra*, 36 Cal.4th at p. 1103.)  Thus, the general rule is that property acquired during marriage is community unless the preponderance of the evidence establishes that a specifically enumerated statutory exemption applies to make it something else.

As applied here, this presumption means that the life insurance policy is presumed to be community property, but that wife can overcome that presumption if she can show, by a preponderance of the evidence, that some other statutory provision makes it her separate property.  There is, or should be, nothing particularly complex or difficult about this rule.

But wife, in arguing that the policy is her separate property, and the Court of Appeal, in so concluding, rely heavily on a different presumption found in the Evidence Code.  Section 662 provides:  "The owner of the legal title to property is presumed to be the owner of the full beneficial title.  This presumption may be rebutted only by clear and convincing proof."  Because legal title in the policy was in wife's name, wife argues, and the Court of Appeal found, the policy is presumed to be her separate property, a presumption rebuttable only by clear and convincing evidence.

Obviously, both presumptions cannot be given effect.  The life insurance policy cannot both be presumed to be community property (because acquired during the marriage) and to be wife's separate property (because placed in her name).  One statutory presumption must yield to the other.

In my view, as in the view of all amici curiae to appear in this case — law professors and attorneys specializing in the field — the section 760 presumption controls in characterizing property acquired during the marriage in an action

between the spouses. Section 662 plays no role in such an action. The detailed community property statutes found in the Family Code, including section 760, are self-contained and are not affected by a statute found in the Evidence Code. I explain why.

California is, and always has been, a community property state. "The community property system originated in continental Europe, came to Mexico from Spain, and became California law through the treaty of 1848." (11 Witkin, Summary of Cal. Law (10th ed. 2005) Community Property, § 1, p. 529.) "From the inception of its statehood, California has retained the community property law that predated its admission to the Union and consistently has provided as a general rule that property acquired by spouses during marriage, including earnings, is community property." (*In re Marriage of Bonds* (2000) 24 Cal.4th 1, 12.) "The general theory is that the husband and wife form a sort of partnership, and that property acquired during the marriage by the labor or skill of either belongs to both." (11 Witkin, Summary of Cal. Law, *supra*, Community Property, § 1, p. 529.)

The presumption, now codified in the Family Code, that property acquired during the marriage is community, is perhaps the most fundamental principle of California's community property law. " 'This presumption is fundamental in the community property system and is an integral part of the community property law not only of this state but of other states and countries where the system is in operation.' " (11 Witkin, Summary of Cal. Law, *supra*, Community Property, § 15, p. 542, quoting *Wilson v. Wilson* (1946) 76 Cal.App.2d 119, 126.)

Section 662 may not nullify this fundamental presumption whenever, as is often the case, the contested property is in the name of one of the spouses. I agree with the amici curiae that, as the brief of the Northern California chapter of the American Academy of Matrimonial Lawyers and the Association of Certified

3

Family Law Specialists puts it, "section 662 has no place in the characterization of property in actions between spouses." As that brief further states, applying section 662 to disputes between spouses "would subvert basic tenets of California family law."

This is not a recent concept. Nine years after California became a state, this court, in an opinion authored by Justice Field, rejected the argument that common law rules regarding title apply to the characterization of property acquired during the marriage. (*Meyer v. Kinzer and Wife* (1859) 12 Cal. 247 (*Meyer*).) In *Meyer*, the husband and wife sold certain property acquired during the marriage and received in return a note and mortgage on the property that was in both the husband's and wife's names. Later the husband, without the wife joining, assigned the note and mortgage to another party. The wife claimed that, because the mortgage was in her name as well as her husband's, one-half of the note and mortgage was her separate property. This court disagreed.

In concluding that the mortgage was community property, this court cited statutory provisions including, as relevant here, a provision substantially similar to section 760: " '[A]ll property acquired after marriage, by either husband or wife, except such as may be acquired by gift, bequest, devise or descent, shall be common property." (*Meyer*, *supra*, 12 Cal. at p. 251.) The court explained that these provisions "are borrowed from the Spanish law, and *there is hardly any analogy between them and the doctrines of the common law* in respect to the rights of property consequent upon marriage. The statute proceeds upon the theory that the marriage, in respect to property acquired during its existence, is a community of which each spouse is a member . . . . To the community all acquisitions by either, whether made jointly or separately, belong. *No form of transfer* or mere intent of parties can overcome this positive rule of law." (*Ibid.*, italics added.)

4

Absent proof that the purchase was made with separate funds of either spouse, the *Meyer* court explained, the presumption that property acquired after marriage is community property "was absolute and conclusive, and it made no difference whether the conveyance was taken in the name of one or the other, or in the names of both." (*Meyer*, *supra*, 12 Cal. at p. 252.) The court quoted with approval an opinion from Louisiana, another community property state, that involved, as does this case, property purchased during the marriage but placed in the wife's name: " 'All property acquired by either spouse during the existence of the community, the law presumes to belong to it . . . . If the wife sets up a separate claim, she must make legal proof of it. *The title being in her name does not raise even a presumption in her favor.*' " (*Id.* at p. 253, italics added in *Meyer*.) The opinion additionally explained that "common law authorities are entirely inapplicable under our system. The statute prescribes the effect of the acquisition of property by either spouse, and *its operation cannot be defeated or evaded by the form of the conveyance*, or the intention of the husband, in taking it in the name of his wife. In every form the community character of the property continues." (*Id.* at p. 255, italics added.)

As relevant here, these principles still generally apply. The statutes governing California's community property law are found in the Family Code; a statute outside of the community property law, such as Evidence Code section 662, cannot nullify those statutes. This circumstance was recognized when section 662 was enacted. (Stats. 1965, ch. 299, § 2, p. 1297.) The Law Revision Commission comment to that section states that it "codifies a common law presumption recognized in the California cases." (Cal. Law Revision Com. com., 29B pt. 2 West's Ann. Evid. Code (1995 ed.) foll. § 662, p. 210.) But California's community property law has no common law roots. It derives from the European continent, not England. In its comment, the Law Revision Commission cited

5

*Olson v. Olson* (1935) 4 Cal.2d 434.  (See *People v. Semaan* (2007) 42 Cal.4th 79, 88 [recognizing "that § 662 codifies the rule of *Olson v. Olson*"].)  But that case indicates the common law presumption does not apply in the marital context: "The deed of gift, a written instrument, signed and acknowledged by appellant, *and unimpaired by any presumption of undue influence arising out of a marital relation between the parties* [the parties were not married at the critical time], was entitled to the full credit given to it by the trial court . . . ." (*Olson v. Olson*, at p. 438, italics added.)  Neither the common law rule nor section 662, which codified that rule, ever applied to characterizing property acquired during marriage in actions between the spouses.

Section 662's purpose is to promote the public policy in favor of "the stability of titles to property"  (Evid. Code, § 605; see *In re Marriage of Haines* (1995) 33 Cal.App.4th 277, 294 (*Haines*).)  That policy is largely irrelevant to characterizing property acquired during the marriage in an action between the spouses.  *Haines* is instructive.  The *Haines* court held that section 662 "must yield to" another presumption within California's community property law — "the presumption arising from the requirement that a husband and wife occupy a confidential relationship in their transactions with each other." (*Haines*, at p. 283; see Fam. Code, § 721.)

*Haines* explained that section 662's "presumption is based on promoting the public 'policy . . . in favor of the stability of titles to property.'  (See [Evid. Code,] § 605.)  'Allegations . . . that legal title does not represent beneficial ownership have . . . been historically disfavored because society and the courts have a reluctance to tamper with duly executed instruments and documents of legal title.'  [Citation.]  [¶]  Section 662 is concerned primarily with the stability of titles, which obviously is an important legal concept that protects parties to a real property transaction, as well as creditors.  Here, however, our focus is on

6

characterization of marital property as effected by a transmutation by quitclaim deed. The issue is how property should be divided between spouses upon dissolution. This case does not involve third parties nor does it place at risk the rights of a creditor. . . . Thus, concerns of stability of title are lessened in characterization problems arising from transmutations that do not involve third parties or the rights of creditors." (*Haines, supra*, 33 Cal.App.4th at pp. 294-295, fn. omitted.)

The presumption of undue influence exists to protect married persons. (*Haines*, *supra*, 33 Cal.App.4th at p. 301.) "[A]pplication of section 662 in such situations can significantly weaken protections the Legislature intended to provide for spouses who are taken advantage of in interspousal transactions. This cannot be in keeping with the intent of the Legislature . . . . Application of section 662 would . . . in effect . . . abrogate the protections afforded to married persons under" what is now Family Code section 721, subdivision (b). (*Haines*, at p. 301.) Accordingly, the *Haines* court "conclude[d] that application of section 662 is improper when it is in conflict with the presumption of undue influence . . . . Any other result would abrogate the protections afforded to married persons and denigrate the public policy of the state that seeks to promote and protect the vital institution of marriage." (*Id.* at p. 302; see *In re Marriage of Fossum* (2011) 192 Cal.App.4th 336, 344-345 [following *Haines*]; *In re Marriage of Delaney* (2003) 111 Cal.App.4th 991, 997 [following *Haines*].)

What *Haines* said about the presumption regarding undue influence applies just as much, if not more so, to the more fundamental presumption that property acquired during the marriage is community. Section 662 may not abrogate the more fundamental presumption just as it may not abrogate the less fundamental presumption. Much property acquired during marriage is in the name of one of the spouses, such as salaries, stock options, retirement benefits, and the like.

7

Applying section 662 to all such property — and concluding that it is separate property unless shown to be otherwise by clear and convincing evidence — would largely nullify the presumption that property acquired during marriage is community.

In concluding that section 662 applies, the Court of Appeal relied heavily on two cases: *In re Marriage of Lucas* (1980) 27 Cal.3d 808 (*Lucas*) and *In re Marriage of Brooks & Robinson* (2008) 169 Cal.App.4th 176 (*Brooks*). Neither case supports the conclusion.

In *Lucas*, this court was concerned primarily with deciding "the proper method of determining separate and community property interests in a single family dwelling acquired during the marriage with both separate property and community property funds." (*Lucas*, *supra*, 27 Cal.3d at p. 811.) Most of the opinion concerns the characterization of a house in which title was in the form of joint tenancy. Although it discusses presumptions at length, *Lucas* never cites section 662 even though that section had been enacted long before the opinion. Rather, it discusses two statutory presumptions, both of which used to be found in Civil Code former section 5110 and are now found in two separate sections of the Family Code. (Fam. Code, §§ 760, 2581.) One is the familiar presumption that property acquired during marriage is community property. (*Id.*, § 760.) The other is a presumption, found in a statute within the community property law and fully consistent with the general presumption, that specifically governs real property designated as a joint tenancy. (*Lucas*, at p. 814.) As quoted in *Lucas*, that statute provided: " 'When a single-family residence of a husband and wife is acquired by them during marriage as joint tenants, for the purpose of the division of such property upon dissolution of marriage or legal separation only, the presumption is that such single-family residence is the community property of the husband and wife.' " (*Id.* at p. 814, fn. 2, quoting Civ. Code, former § 5110 [see now Fam.

Code, § 2581].)  Both of these presumptions favor a finding of community property, and thus they are compatible.

Significantly, the statutory presumption regarding property in the form of joint tenancy applies "[f]or the purpose of division of property on dissolution of marriage."  (Fam. Code, § 2581; see Civ. Code, former § 5110.)  This language suggests that rules that apply to an action between the spouses to characterize property acquired during the marriage do not necessarily apply to a dispute between a spouse and a third party.

Thus, the form-of-title presumption the *Lucas* court discussed is a specific statutory presumption found within California's community property law, not the more general presumption found in section 662.  That this is so is made clear later in the opinion when the court stated that certain "evidence and findings are insufficient to rebut the presumption arising from title *set forth in Civil Code section 5110* [i.e., current Fam. Code, § 2581]."  (*Lucas*, *supra*, 27 Cal.3d at p. 815, italics added.)  *Lucas* does not address section 662's role in an action between the spouses.

*Brooks* also did not present this question.  At the appellate level, the dispute in *Brooks*, *supra*, 169 Cal.App.4th 176, did not involve an action between the spouses.  Rather, on appeal, the sole dispute was between a *third party*, to whom the wife had sold certain real property, and the husband, who claimed an interest in the property and sought to set aside the sale.  The wife did not even appear in the appeal.  The Court of Appeal used section 662 to help resolve the dispute in favor of the third party, whom the trial court found to be a bona fide purchaser who had purchased the property without knowing of any community property claim the husband might have had.  The Court of Appeal noted that the trial "court did not expressly determine whether the Property was a community property asset."  (*Brooks*, at pp. 182-183.)  Rather, the trial court had merely held that the

9

third party was a bona fide purchaser and, as such, " 'takes it[s] title free of any unknown community property claim [the husband] may have with respect to the Property.' " (*Id*. at p. 183.) The Court of Appeal agreed with this conclusion. It emphasized section 662's purpose of promoting the stability of titles to property. (*Id*. at p. 185.) Unlike in the case of an action between the spouses, this policy *does* play a role in a dispute between a spouse and an innocent third party purchaser.

The *Brooks* court stressed that the appeal "does not involve a division of the community estate between [husband and wife]. Whether [the wife] might be obligated to reimburse [the husband] for his contributions to the Property was not before the trial court and is not an issue on appeal." (*Brooks*, *supra*, 169 Cal.App.4th at p. 188.) Accordingly, *Brooks* concerned the rights of a third party that purchased property in good faith not knowing of any possible community property claims. *Brooks* might have been correct to apply section 662 to an action between one of the spouses and a third party bona fide purchaser. That question is not implicated here, and I express no opinion on it. To the extent *Brooks* said anything suggesting section 662 would apply to an action between the spouses, it mistakenly relied on *Lucas*, *supra*, 27 Cal.3d 808, and is, accordingly, unpersuasive.

In short, the statutes in the Family Code governing community property, including the section 760 presumption, are sufficient unto themselves. Evidence Code section 662's common law presumption does not nullify the community property statutes. *All* property acquired during the marriage is presumed to be community property. Evidence that certain property is in the name of one spouse might, depending on the circumstances, be relevant to help overcome the presumption if and only if it demonstrates that one of the statutory exemptions to the presumption applies. But that evidence does not itself reverse the

10

presumption. Future courts resolving disputes over how to characterize property acquired during the marriage in an action between the spouses should apply the community property statutes found in the Family Code and not section 662.

CHIN, J

WE CONCUR:

CORRIGAN, J.
LIU, J.

11

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  In re Marriage of Valli
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 195 Cal.App.4th 776
**Rehearing Granted**

_____

**Opinion No.** S193990
**Date Filed:** May 15, 2014
_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Mark A. Juhas

_____

**Counsel:**

Jaffe and Clemens, William S. Ryden and Nancy Braden-Parker for Appellant.

Garrett C. Dailey; Walzer & Melcher, Peter Walzer and Christopher C. Melcher for Respondent.

Charlotte K. Goldberg and Herma Hill Kay as Amici Curiae on behalf of Respondent.

Grace Ganz Blumberg and Herma Hill Kay as Amici Curiae on behalf of Respondent.

Sideman & Bancroft and Diana E. Richmond for Northern California Chapter of the American Academy of Matrimonial Lawyers and the Association of Certified Family Law Specialists as Amici Curiae on behalf of Respondent.
___
Law Office of Kim W. Cheatum and Kim W. Cheatum as Amici Curiae on behalf of Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

William S. Ryden
Jaffe and Clemens
433 North Camden Drive, Suite 1000
Beverly Hills, CA  90210
(310) 550-7477

Garrett C. Dailey
2915 McCluare Street
Oakland, CA  94609
(510) 465-3920